OPINION OF THE COURT
Kathryn McDonald, J.
In this paternity proceeding, the deceptively simple question of who is to pay for a lab test presents myriad troublesome questions of statutory construction, public policy, and gender-based discrimination. The issue before the court is whether, pursuant to section 532 of the Family Court Act as recently amended (L 1981, ch 9), the respondent alleged father can be required to pay for the human leukocyte antigen (HLA) blood test requested by the petitioner, Commissioner of Social Services. The facts are largely uncontested; it is the statute itself which is less than clear.
FACTS OF THIS CASE
The child in question was born 10 years ago, on November 1,1971. (The petition, filed on May 28,1981, is timely. *618 [Family Ct Act, § 517, subd Ob)].) On June 29, 1981, at the first court appearance attended by all parties, a blood grouping test was ordered at respondent’s request and at his expense. The results of that test, which was not a human leukocyte antigen test, are admissible only to exclude respondent. The Commissioner of Social Services did not request additional tests at that time.
The results of the first blood test (the “red blood cell” or “RBC/ABO” test) indicated that the respondent cannot be excluded from paternity. The Commissioner of Social Services then requested the more sophisticated HLA test, the results of which may be introduced as evidence that respondent is the father of the child in question. Respondent did not object to the HLA test itself, but states his inability to pay the substantially higher cost — at least $600, compared to the $150 fee paid by him for the RBC/ABO test.
The statute (Family Ct Act, § 532) directs that “[i]f the alleged father is financially unable to pay for the costs of a test”, the court may direct the Commissioner of Social Services to pay. The facts in this case indicate that the respondent is a working man who supports his wife and two children, and who is significantly in debt due to extraordinary medical expenses not reimbursed by his insurance. With a net weekly income of approximately $260, three dependents, and a debt of more than $9,000, respondent’s “ability” to pay without imposing genuine hardships on his family is at least questionable. On the facts of this case the court will not impose on respondent the burden of paying for the production of evidence sought by the petitioner. Aside from the facts peculiar to this case, the court wishes to note its concerns regarding the statute as a whole.
STATUTORY DIFFICULTIES
The addition of language permitting the introduction of positive HLA test results indicating probabilities of paternity was accomplished without changing the existing text of section 532 of the Family Court Act. Thus, statutory language specifying the right to one or more blood tests (dating from 1935) and the liability for the costs of the tests *619 (added in 1962) was left unchanged.* Unfortunately, the statute when read as a whole now produces a situation in which a petitioner mother may exercise her “right” to have the court order an HLA blood test that is admissible to bolster her case — at the expense of the opposing„party. Even if the test proves, conclusively that the respondent is not the father, the statute directs that he, and not the petitioner mother, is to pay the cost.
Before enactment of the HLA amendment when blood test results were available at the alleged father’s option without the consent of the petitioner mother, and could be admitted into evidence only to exclude him, thus only helping, and not hurting his case, the rationale for assigning the cost of the test to the alleged father was clear.
With the passage of the 1976 amendment to section 532 of the Family Court Act (L 1976, ch 665), allowing males to be petitioners in paternity actions, some of the nouns and pronouns referring to (female) petitioners and (male) respondents were changed, but not all. Specifically, section 532, which had formerly provided for blood tests on motions of the (male) “respondent” was changed to provide that “the court on motion of any party shall advise the parties of their right to a blood test” (emphasis added). Significantly, however, the cost of the test was still to be borne, not by “any party” who requested it, but only by the alleged father, or the public purse. In 1977, before the HLA amendment, that allocation of cost still made sense; since the only admissible result was exclusion, the benefit of the test was still primarily the alleged father’s and the cost as well.
The former balance between benefit and cost is undone by the new law. The HLA results are now admissible not only to exclude the alleged father but to include him in the class of likely fathers, indeed to demonstrate the probabilities of paternity. Moreover, the test is available as a matter of right to both parties. The test results may prove particularly important to a petitioner (such as, in the *620 present case, the Commissioner of Social Services), whose petition is brought 10 years after the child’s birth; in the absence of “fresh” evidence concerning the child’s conception, the HLA may prove crucial. Is it not anomalous that the party seeking evidence to prove his case can force the opposing party to pay for it?
The statute assigns the cost of the blood test not to one party or another, and not to the party who requests the test, but, invariably, to the male, the “alleged father”. The original rationale for that assignment of expense has disappeared with the introduction of the HLA, and the statute as presently enacted may be vulnerable to a constitutional challenge on the basis of sex-based discrimination.
JUDICIAL CONSTRUCTION OF SECTION 532 OF THE FAMILY COURT ACT
This court will not lightly pass upon constitutional issues that could result in a declaration of unconstitutionality, but neither will it tolerate a conspicuous inequity. The solution may be found in principles of statutory construction that will preserve, in a fair manner, the presumed lawful intent of the legislation. (Matter of Goldberg v Aylward, 72 AD2d 510.)
That intent, clearly, is to make available to the parties and trier of facts the most reliable medical evidence as to the paternity of the subject child. With some modification of the secondary question of whose obligation it is to pay for the production of medical evidence, the primary goal can be preserved.
The words of section 532 of the Family Court Act are clear and state that the “alleged father” may be relieved of his obligation to pay only if he is financially unable (regardless of which party seeks the evidence, or the party’s financial means). There is no requirement in the statute that the less expensive RBC/ABO test, which can decisively exclude the respondent as the alleged father, be ordered first (although the statute bars use of the HLA if the alleged father has already been so excluded). Neither is there a requirement that the petitioner mother present evidence of at least some relationship with the respondent before obtaining the HLA at respondent’s expense. (But see *621 Matter of Jane L. v Rodney B., 108 Misc 2d 709, citing State v Meacham, 93 Wn 2d 738.) A totally innocent respondent may thus be taxed with a substantial expense, over and above the cost of appearing in court and contesting the petition. The court doubts that the words of the statute accurately convey the Legislature’s intent.
Statutes may be subjected to judicial construction when their over-all meaning is ambiguous, even if the isolated words or sentences are clear. As stated in section 76 of McKinney’s statutes: “[I]t is clear intent, not clear language, which precludes further investigation as to the interpretation of a statute. Language of a portion of an act, which, when separated from the rest, is plain and unambiguous, may, when read in connection with the whole act, be thereby rendered ambiguous, and thereupon the necessity for construction arises. The uncertainty of sense in a statute, which warrants the application to it of the principles of construction does not originate in uncertainty of expression alone, but may proceed also from the uncertainty caused by an unjust or unreasonable application; and, if a statute viewed from the standpoint of the literal sense of the language, works an unjust or unreasonable result, an obscurity of meaning exists which calls for judicial construction.”
The Court of Appeals dealt with problems of literal application of a statute versus over-all intent in the recent “heart law” case (Uniformed Firefighters Assn. Local 94, IAFF, AFL-CIO v Beekman, 52 NY2d 463). In that case, the court ruled in favor of firemen who argued that section 207-k of the General Municipal Law establishes a dual presumption that a disabling heart condition suffered by a fireman or policeman was both job related and accidental — although the statute omits any mention of accidental or other origins of the condition. The court reasoned (p 471) that, although the statute is clear and unambiguous on its face, “‘the absence of ambiguity facially is never conclusive. Sound principles of statutory interpretation generally require examination of a statute’s legislative history and context to determine its meaning and scope’”.
In Beekman, the court concluded (p 471) that “the extensive legislative history shows that the literal reading pro *622 posed by the city would frustrate the statutory purposes” and confirmed the declaratory judgments issued below that both presumptions were intended by the Legislature to be included in the statute.
The legislative history of the HLA bill deals almost exclusively with the need for and usefulness of the HLA blood test evidence. The only mention of the payment provisions of section 532 of the Family Court Act (which, as noted earlier, were unchanged) notes that the Commissioner of Social Services will continue to be liable in some cases. Thus it is clear that the Legislature’s overriding concern was to make the most reliable medical evidence available to the parties and to the trier of facts. Payment for the lab tests is clearly a secondary issue. However, the gender distinction incorporated in the section threatens implementation of the statute as a whole. Once the need for judicial construction is established, the statute must be construed creatively, even to the opposite of its language, in order to avoid a mischievous, unequal, or unconstitutional result. (See McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 147, 148, 150.)
A reasonable construction of the statute as presently written would provide for payment in the first instance by the party requesting the HLA. If paternity is ultimately proved by clear, convincing, and entirely satisfactory evidence, and orders of filiation and support are entered, reimbursement to the petitioner (or public welfare official) of the costs of the HLA test may be included as part of the order of support.
On the facts of this case, the court directs that the petitioner Commissioner of Social Services pay the costs of the HLA test agreed to by all parties in court on September 14, 1981. That test is to be performed forthwith, in order that this case may proceed to trial on the previously set adjourned date, December 30,1981. As to the applicability of the payment provisions of section 532 of the Family Court Act to other cases, this trial court respectfully requests that the Legislature consider the concerns set forth in this decision.

 In the former context, when only the RBC/ABO test was available, multiple tests referred only to repeated RBC/ABO tests performed in unusual circumstances in which it appeared that an error may have occurred in testing. (See Matter of Carol B. v Felder R.J., 94 Misc 2d 1015.)