OPINION OF THE COURT
Stanley Gartenstein, J.
In the wake of the action of the Court of Appeals holding unconstitutional the major provisions (viz., the last sentence) of Family Court Act § 1039 (e) (cf. Matter of Marie B., 62 NY2d 352), the question left open by this ruling was whether or not a nisi prius court must conduct a preliminary hearing prior to vacatur of an adjournment in contemplation of dismissal (ACD). For reasons set forth herein, we rule in the negative as a matter of law.
The Facts: By petition dated July 9,1984, respondent mother was charged with neglect of the three subject children based upon allegations of her being unable to care for them because of her mental disability for which she has refused medication. On December 21, 1984, with the consent of the petitioning social services agency, the Law Guardian and all other persons concerned with this litigation, this matter was adjourned in contemplation of dismissal upon certain specific conditions including a requirement that the respondent mother continue in therapy and cooperate with supervision by the Commissioner of Social Services. On March 5,1985, a petition alleging violation *314 of the conditions of the ACD was filed alleging that respondent had made her whereabouts unknown; had threatened to burn down the home of the natural grandmother who was the legal custodian of the children; and other assorted violations. On March 26, 1985, respondent appeared with counsel and demanded a preliminary hearing on the issue of vacatur of the ACD as a statutory condition precedent to the Commissioner’s being allowed to proceed to plenary hearing on the merits of the underlying petition. Respondent relies upon the text of Family Court Act § 1039 (e) which provides with reference to vacatur of an ACD: “(e) Upon application of the petitioner or the child’s attorney or law guardian, or upon the court’s own motion, made at any time during the duration of the order, the court may restore the matter to the calendar, if the court finds after a hearing that the respondent has failed substantially to observe the terms and conditions of the order or to cooperate with the supervising child protective agency. In such event, circumstances of neglect shall be deemed to exist, and the court may thereupon proceed to a dispositional hearing under this article and may, at the conclusion of such hearing, enter an order of disposition authorized pursuant to section one thousand fifty-two with the same force and effect as if a fact-finding hearing had been held and the child had been found to be an abused child or a neglected child.” (Emphasis added.)
Respondent argues that the requirement of a hearing prior to restoration exists independently of the second sentence of this subdivision which was struck down as constitutionally offensive by the Court of Appeals. Notwithstanding that the statutory requirement of a hearing prior to vacatur of an ACD is grammatically separated from the constitutionally offensive provisions, we hold as a matter of law that this construction urged upon us results in a manifest absurdity. Accordingly, we hold that a preliminary hearing is not a condition precedent to vacatur of an ACD originally granted under this section.
Discussion: The application of procedures for adjournment in contemplation of dismissal (ACD) in child neglect and abuse cases (cf. Family Ct Act § 1039 et seq.), conceived by the Legislature as a needed tool for child protective agencies and the court to meet an almost epidemic increase in violence against children has never lived up to expectations. From the moment this enactment first saw the light of day in committee through to its final approval by then Governor Carey, unnerving doubts surfaced as to the constitutionality of its provisions in effect sustaining the original petition on its merits without proof of its *315 underlying allegations simply upon proof of violation of the terms of the ACD.
In his Practice Commentary, Professor Douglas J. Besharov, commenting on Family Court Act § 1039, stated: “Putting aside, for the moment, the doubtful constitutionality of this approach, one must question the necessity of this section” (McKinney’s Cons Laws of NY, Book 29A, part I, Family Ct Act, p 367).
In approving this bill, the Honorable Hugh L. Carey, then Governor of New York stated: “I am troubled, however, that the bill, in permitting the court to proceed to a dispositional hearing on the basis of a finding of non-cooperation, however unjustified, fails to require that actual neglect be proved.” (Governor’s Memorandum of Approval, L 1975, ch 707, 1975 McKinney’s Session Laws of NY, at 1768.)
In order to understand the controversial provisions of this statute, it is first necessary to step back from its specific terms in order to put its scheme into perspective.
The procedural device of an ACD first saw the light of day in CPL 170.55. It was a statutory codification of the existing practice in the criminal courts known as a “DOR” (discharge on own recognizance) whereby, with the consent of prosecutor and defendant, a case would be adjourned for a set period, after which, failing rearrest or other antisocial act leading the prosecutor to restore it to the active calendar, it would be subject to formal dismissal (cf. Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 170.55, p 91). This practice which existed outside the formal statutory scheme, was a practical articulation of the prosecutor’s common-law prerogative of nolle prosequi, which, upon recodification of criminal procedural statutes in 1849, became vested jointly in the prosecutor and court (People v Quill, 11 Misc 2d 512). Because this ad hoc practice was not self-executing in that it required a formal motion to dismiss which was often not forthcoming, the Criminal Procedure Law specifically codified it and made the dismissal after the requisite time period self-executing rather than subject to a motion.
What is never sufficiently stressed is the fact that classically an ACD is an act of prosecutorial grace, nonreviewable by any court (People v Cunningham, 106 Misc 2d 326) which may be withdrawn at will[1] upon ex parte application (cf. Singleton v City of New York, 632 F2d 185).
*316 Subsequent to its formal codification in the Criminal Procedure Law, the utility of this device was recognized for juvenile court proceedings by the statutory enactment of Family Court Act § 749 (a) (subsequently redistributed into Family Ct Act § 315.3). In contrast to the prosecutor’s hnreviewable prerogative in the criminal courts, the juvenile court version removed this prerogative from the prosecutor’s uncontrolled discretion and vested ultimate authority to overrule this discretion in the court itself which could act without the consent of the presentment agency (cf. Family Ct Act § 315.3). With this sole exception, these two procedures were similar.
The legislative grafting of the ACD provisions of Family Court Act § 1039 into child protective proceedings are an attempt to pattern this new procedural device upon its two preexisting incarnations. (See, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, part I, § 1039, p 367.) Additionally, the Legislature also saw fit to allow the Family Court in child protective proceedings to go further than criminal or juvenile courts could do by providing that a violation of an ACD issued in a child protective proceeding would be deemed an act which if proven, would justify the court in sustaining the original petition on its merits without any proof whatsoever of its underlying allegations. Because of justifiable fears that this scheme was unconstitutional, the Legislature included a threshold requirement of a violation hearing prior to vacatur of the ACD. It was specifically the existence of this provision which impelled Governor Carey to approve the original bill (see, Governor’s Memorandum of Approval, id., If 4). Its inclusion in section 1039 was inextricably connected with the provisions suspected to be constitutionally offensive and it has no existence independent thereof regardless of the accident of grammatical usage which fortuitously placed it in the first sentence of section 1039 (e) instead of in the textual portion thereof struck down by the Court of Appeals.
In Matter of Marie B. (62 NY2d 352, supra),, almost 10 years later, the Court of Appeals was finally given the opportunity to rule what everyone had suspected,[2] viz., that “a violation of the ACD order is equated with parental neglect, thereby obviating a finding of the latter as a requisite to the deprivation of the parental right to care and custody of the child. Such an equation” the court held, “cannot withstand constitutional scrutiny” (p 358).
*317 Amplifying upon its decision, the court stated: “In this case, as well as in similar situations, section 1039 would authorize the removal of the child upon the mere showing that the parent had failed to obey the terms or conditions of the ACD order, whether or not such failure in fact amounted to neglect, unfitness or any other constitutionally required predicate. Indeed, there is no provision under the statutory scheme for the requisite demonstration and finding of neglect or abuse of the child. Rather, once the court finds that the ACD order has been violated, circumstances of neglect are simply ‘deemed to exist’ without the presentation of any evidence to prove that it is so. Such a constructive finding is a constitutionally inadequate justification for the drastic interference with parental rights permitted under the statute.” (Matter of Marie B., supra, pp 358-359.)
A ruling adopting the construction of the statute in question urged by respondent would first require that a hearing be held to determine if a violation of the ACD exists; then, if the violation be sustained, said act would have the net effect of simply permitting the prosecutor to proceed on the merits of the original petition, an act he could have done any time with or without proof of violation. This results in a manifest absurdity. To require proof of two separate sets of allegations where one ordinarily suffices simply because an act of prosecutorial grace has been extended is in fact the ultimate absurdity. The law has never required the construction of a statute which would cause objectionable results (cf. People v Ryan, 274 NY 149) or undue inconvenience or hardship (Olson v Kilian, 203 Misc 847). While consequences cannot alter statutes, they may help to fix their meaning (cf. McKinney’s Cons Laws of NY, Book 1, Statutes § 141) and are important as a clue to their meaning (Matter of Emerson v Buck, 230 NY 380), courts are not bound to close their eyes to consequences (Ewen v Thompson-Starrett Co., 208 NY 245). It is presumed that the Legislature intended statutes to have practical results and they should be given construction which is practicable and not the reverse. (Hand v Fraser, 139 Misc 446, affd 233 App Div 800; Public Serv. Commn. v New York Cent. R. R. Co., 193 App Div 615; Braunstein v Swartz, 189 Misc 791.)
To be sure, the Court of Appeals did not strike out the statutory language dealing with a hearing. In point of fact, it referred to this requirement in its opinion. (Matter of Marie B., supra, p 359.) However, a reading thereof clearly demonstrates that the hearing referred to was one in which actual neglect could be found sufficient to sustain a finding on the petition-in-chief, and that this finding may be based upon any neglect *318 which is proven regardless of the vehicle therefor, be it the petition-in-chief or proof of violation of the ACD if same rises to the level of independent sustainable neglect, or otherwise. This position is entirely consistent with the terms of Family Court Act § 1051 (b) which requires the court to entertain all evidence of neglect whether originally alleged or not, and to deem the pleadings amended accordingly. In no event can we construe Marie B. or any dictum therein to require that a hearing be held simply to confer upon the petitioning child protective agency the right to prosecute its original case on the merits, a right incidentally, which is a statutory mandate (Family Ct Act § 1032).
The motion for hearing is denied. The ACD is vacated. This cause is restored for trial on the merits for a date certain to be fixed by the clerk.

. Recent amendments now require a prosecutor to show good cause to the court before obtaining permission to an ACD. This application however, although sometimes denied (People v Cunningham, 106 Misc 2d 326) remains ex parte one.

. Cf. in addition to authority cited above, Matter of Paul “X”. (57 AD2d 216); Matter of Diana M. (104 Misc 2d 766); Matter of Gary A. (60 AD2d 927).