OPINION OF THE COURT
Alan D. Oshrin, J.
The petitioner’s CPLR article 78 proceeding seeking to enjoin Eastern Suffolk Board of Cooperative Educational Services (BOCES) from awarding the contract (bid No. 7-39) for roofing work on the Islip Technical Center and to annul any contract already awarded; to permanently enjoin BOCES from transferring any funds to Plato and Plato from commencing any work in connection with roofing at the Islip Technical Center; to permanently enjoin BOCES from awarding the roofing contract at the Islip Technical Center to any other bidder except the bidders whose bids were publicly opened and publicly read on May 21, 1997 at 11:00 a.m.; and for costs, disbursements and attorney’s fees is dismissed; and it is further ordered that the respondent BOCES’ CPLR 3211 and 7804 (f) cross motion to dismiss the petition is granted.
On June 19, 1997 at the oral argument of the application for preliminary injunctive relief this court denied the petitioner’s application and converted the respondent Eastern Suffolk BOCES’ motion to dismiss to a motion for summary judgment. The parties were given five days to provide additional papers to the court. At the oral argument Statewide Roofing, Inc. (hereinafter Statewide) withdrew its request for lost profits and damages.
BOCES advertised for bids for a partial roof replacement at the Islip Technical Center, located at 375 Locust Avenue, Oak-dale, New York, pursuant to section 103 of the General Municipal Law. The bid documents required the bids to be submitted no later than Wednesday, May 21, 1997, at 11:00 a.m. at which time the bids were to be publicly opened and read aloud in accordance with section 103 of the General Municipal Law. Four bids were opened at the public bid opening. Statewide was the low bidder at the public hearing with a bid of $525,000.
At 10:15 a.m. on May 21st a UPS packet was delivered to BOCES at 201 Sunrise Highway, Patchogue, New York, from Plato General Construction (hereinafter Plato). The packet was addressed to "Purchasing Office” in accordance with the notice of bidders. The packet was signed for by Joseph D’Agostino, a BOCES custodian, and placed on the desk of Al *516 lan Herrmann, the Administrative Assistant for Purchasing at BOCES, immediately thereafter. Mr. Herrmann did not visit his office until 2:30 p.m. at which time the packet was seen. The packet was not opened until Mr. Herrmann confirmed both through Mr. D’Agostino and UPS that the packet had arrived prior to the 11:00 a.m. deadline. The packet and sealed bid were opened by Mr. Herrmann in the presence of Stanley Packman, the Director of Administrative Services at BOCES, and Charlene Delgado, an assistant to Mr. Herrmann. The bid submitted by Plato was for $468,000 which was $57,000 less than Statewide’s bid of $525,000. The contract was awarded to Plato and this proceeding ensued.
The provisions of the statutes and ordinances of the State requiring competitive bidding in the letting of public contracts evince a strong public policy of fostering honest competition to assure prudent and economical use of public moneys and to facilitate the acquisition of high quality goods and services at the lowest possible cost (see, Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth., 88 NY2d 56 [1996]; Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187 [1968]; General Municipal Law § 100-a). The purpose of these laws, in addition to the protection of taxpayers and the public fisc by obtaining the best work at the lowest possible price, is to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of public contracts (see, Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth., 88 NY2d 56, supra; Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144 [1985]; Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, supra). Inasmuch as these laws were intended for the benefit of the taxpayers and not to help enrich the corporate bidders, these laws are to be construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest (see, Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, supra; Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, supra).
Section 103 (2) of the General Municipal Law provides in pertinent part that "[a]ll bids received shall be publicly opened and read at the time and place so specified”. Statewide argues that because Plato’s bid was not publicly opened and read with the other bids, Statewide’s was the lowest of the publicly opened and read bids, and that the award of the contract to Plato violates BOCES’ own bidding procedure and the statu *517 tory competitive bidding requirements. This is Statewide’s sole objection. There is no allegation of dishonesty, favoritism, fraud, corruption, or that Plato’s was not the lowest actual bid. In the absence of any such allegation, and in light of the public policy and purpose discussed above, and the principle that these laws are to be construed and administered so as to accomplish the purpose of benefiting the taxpayers fairly and reasonably with sole reference to the public interest, the court finds that the "nonpublic” opening of Plato’s bid, other than at the time that the bids were opened publicly, is not an impediment to an award of the contract to Plato, the lowest actual bidder.
The court observes that this finding is consistent with several principles for the construction and interpretation of statutes. If the spirit and purpose of an act find fair expression therein, it is to be construed accordingly, even though the interpretation thus placed upon it is contrary to the literal meaning of some of its provisions. A court in construing a law will sometimes be guided more by its purpose than its phraseology, whereby a statute is not to be read with a literalness that destroys the meaning, intention, purpose or beneficial end for which the statute has been designed (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 96). Similarly, in considering the necessity of literal construction of a statute or the propriety of a departure therefrom, it must be kept in mind that the intent of the Legislature is the primary object sought in the interpretation of statutes, and that whenever such intention is apparent it must be followed in construing the statute. While such intention is first to be sought from a literal reading of the act itself, and the words and language used, giving such language its natural and obvious meaning, it is generally the rule that the literal meaning of the words used must yield when necessary to give effect to the intention of the Legislature. The letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature or leads to conclusions, inconsistent with the general purpose of the statute or to consequences irreconcilable with its spirit and reason (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 111).
Further, while general words in a statute ordinarily should be given their full significance, their meaning may, in a proper case, be restricted. When lawmakers use language in an enactment they do not and cannot foresee all the future applications of such language, and courts in construing such statutes, *518 are frequently required to limit their application in order to avoid absurd, unjust or other objectionable results. Words, however general, must yield to the necessary particular application (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 113). A construction of a statute which tends to sacrifice or prejudice the public interests or welfare is not favored and should be avoided if possible (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 152). Finally, in construing a statute, it will be presumed that the Legislature did not intend an unreasonable result to ensue from the legislation enacted, and such intent will not be imputed to it, and the statute must be given an interpretation consonant with that construction. In order to avoid an unreasonable result, and to effect the intention of the Legislature, words of a statute may be enlarged or restrained in their meaning and operation, and language which is general in expression may be subjected to exceptions through implication. Such rule may be applied where the statute is so broadly drawn as to include the case before a court, but reason and the statutory purpose show that it was obviously not intended to include that case (see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 143; Williams v Williams, 23 NY2d 592 [1969]).
Critical to the court’s finding are the facts that Plato’s bid was delivered to the correct address prior to the 11:00 a.m. deadline; that Mr. Herrmann confirmed this fact before endeavoring to open the UPS packet and the bid, and that the bid was not privately opened by Mr. Herrmann, but opened in the presence of Mr. Packman and Ms. Delgado. Under such circumstances the court is satisfied that there is no dishonesty, favoritism, improvidence, fraud, or corruption presented here; and that there is no material or substantial irregularity in the bidding process which undermined the fairness or the competition, impermissibly contravening the public interest in the prudent and economical use of public moneys (see, Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, supra). To set aside the contract awarded to Plato, the lowest actual bidder by $57,000, under the facts and circumstances of this case merely because its bid was not opened and read publicly with the other bids, as required by the statute, and to place BOCES in the position of having to relet the bid, would be an unreasonable application of the statute, the purpose of which is to protect the taxpayer and to assure the prudent and economical use of public moneys; would be contrary to the Legislature’s intent, and would foster an unrea *519 sonable result. It could not have been the Legislature’s intent to require that the lowest actual bid be rejected under circumstances such as these. The court notes, at this juncture, that because the bid document provided that BOCES had the discretion to "reject any or all proposals and to advertise for new proposals” this court would be without authority to award the contract to Statewide, thereby substituting its judgment for that of BOCES, even if the court determined that a setting aside of the contract to Plato was warranted (see, Matter of Superior Hydraulic v Town Bd., 88 AD2d 404 [1982]; Marchionne v New York State Dept. of Transp., 88 AD2d 655 [1982]; Blandford Land Clearing Corp. v Davidson, 62 AD2d 1007 [1978]).
The court having found that Plato’s bid was properly received and considered by BOCES, Plato’s bid being the lowest bid submitted for the roofing project, and there being no issue raised as to Plato’s not being a responsible bidder, the court finds that BOCES’ award of the contract to Plato had a rational basis, is neither arbitrary nor capricious and should be sustained (see, Matter of Pell v Board of Educ., 34 NY2d 222 [1974]; Matter of Gandolfo v White, 224 AD2d 526 [1996]). Accordingly, a dismissal of the petition is warranted.