OPINION OF THE COURT
Lucy Billings, J.
I. Background
Petitioner mother and guardian of her daughter and son, who reside with petitioner, seeks a court order changing her name and her children’s names because petitioner is a domestic violence victim; her abuser knows all her identifying information; and she fears that her and her children’s lives and safety are in serious jeopardy unless she and her children change their names. (Civil Rights Law §§ 60-61.) Therefore she also requests, as essential to their safety, that notice of their name changes not be (1) given to her daughter’s father, the abuser (Civil Rights Law § 62 [1]), (2) published (Civil Rights Law §§ 63, 64-a) or (3) maintained as a court record accessible to the public (Civil Rights Law § 64-a). She attests that if the name changes are made public or disseminated, her “attacker will find out,” and her and her children’s safety will remain in jeopardy. (Doe affidavit, Nov. 19, 2003.)
In addition to petitioner’s personal knowledge of the father’s abuse over the course of two years and his persistent, continuing threats to kill her, hearsay evidence indicates he also has a long criminal record and is wanted by the State of Georgia, her former residence, on charges of rape, assault with a deadly weapon, possession of a firearm, and carjacking. On October 16, 2003, the New York County Family Court issued an order of protection requiring the father to stay away from petitioner and her children, whose residence the court kept confidential, and refrain from threats, intimidation, or any criminal offense against her.
II. Waiving Publication and Sealing the Court Record
Court ordered name changes are to be published in a designated newspaper in New York County within 20 days after the name change order is entered. (Civil Rights Law § 63.) Although only one reported decision interprets Civil Rights Law § 64-a since its enactment in 1994, section 64-a plainly *650 authorizes waiver of publication and sealing of the court record upon a finding that publication of a name change would jeopardize the safety of the person whose name is changed. (Matter of L.V., 2 Misc 3d 249, 250 [Civ Ct, NY County 2003].) The history of domestic violence inflicted upon petitioner, her fear of the perpetrator’s future retribution against her, and her and her children’s need to conceal their identity and whereabouts and secure their safety from the perpetrator are plainly circumstances to which section 64-a applies, dictating an exemption from publication and a sealing of the record. (Matter of L.V., 2 Misc 3d 249, 250-251.)
In sum, based on the verified petitions and accompanying affidavits, publication of the name changes for petitioner, her daughter, and her son would jeopardize their safety. (Civil Rights Law § 64-a.) Therefore the court exempts them from the requirements of Civil Rights Law §§' 63 and 64 to publish petitioner’s and her children’s name changes and seals the records of this name change proceeding. The records may be opened only by a court order, at petitioner’s request, or at the request of her daughter or son after the child reaches age 18 years. (Civil Rights Law § 64-a.)
Because the father of petitioner’s daughter is living, even if convicted and sentenced for a felony, he retains his rights to property and to transfer it by will. (Civil Rights Law § 79-b; Matter of Fein, 51 Misc 2d 1012, 1014 [Civ Ct, NY County 1966]; see Civil Rights Law § 79 [1]; Matter of Petras, 123 Misc 2d 665, 667 [Civ Ct, Queens County 1984].) His daughter retains her concomitant right to inherit from her father, regardless of any change in her name. (E.g., Matter of Gratz, NYLJ, Aug. 23, 1991 [Sur Ct, NY County].) Such a name change, however, particularly if not made public, will make it extremely difficult to locate her to distribute any inheritance. While far from a complete solution to this dilemma, the records of this name change proceeding also may be opened upon evidence that the father is deceased.
As the father neither is a party nor has appeared in this proceeding, it remains unlikely that anyone seeking to locate the daughter upon her father’s death wi,ll search this court’s records. As the father is a party to the New York County Family Court proceeding that sought an order of protection, the Clerk of this court shall transmit a copy of this decision and order and the accompanying name change order to the New York County Family Court Clerk, to be filed with the court’s records under *651 Docket No. 0-12386-03. The portion of the Family Court record transmitted from this court similarly shall be sealed and may be opened only by a court order, at petitioner’s request, at the request of her daughter or son after the child reaches age 18 years, or upon evidence that the daughter’s father is deceased.
III. Dispensing with Notice to the Father
Petitioner’s request to dispense with notice to her daughter’s father is a more difficult issue. Adults always may change their name without any court order as long as the different name is not to perpetrate fraud or interfere with another person’s rights. (Matter of Stempler, 110 Misc 2d 174, 175 [Sup Ct, NY County 1981]; Matter of Linda Ann A., 126 Misc 2d 43, 44 [Sup Ct, Queens County 1984]; Matter of Conde, 186 Misc 2d 785, 786 [Civ Ct, Kings County 2000]; Matter of Sakaris, 160 Misc 2d 657, 660 [Civ Ct, Richmond County 1993].) Civil Rights Law §§ 60, 61 and 63 do not diminish the right to change one’s name without an order. (Matter of Linda Ann A., 126 Misc 2d 43 [1984]; Matter of Conde, 186 Misc 2d at 786.) Nor does the statutory scheme prevent an adult from changing a child’s name. When an adult invokes the judicial procedure to change a child’s name more expeditiously than through usage, however, considerations in addition to fraud or interference with other persons’ rights may come into play, as the statutes require the court to determine whether the child’s name change will promote her interests. (Civil Rights Law § 63; Matter of Sakaris, 160 Misc 2d at 660, 663; see Matter of Stempler, 110 Misc 2d at 175; Matter of Linda Ann A., 126 Misc 2d at 44.)
Where one parent petitions for a court ordered change of a child’s name, notice of the petition and of when and where it will be presented is to be served on the other parent. (Civil Rights Law § 62 [1].) Civil Rights Law § 62 (1) does not contain any authorization comparable to section 64-a for a waiver of this notice upon a finding that notice of the requested name change would jeopardize the safety of the person whose name is to be changed. The only exemptions from the notice requirement are when the second parent is (1) deceased, or (2) “cannot be located with due diligence within the state, and . . . such person has no known address without the state.” (Civil Rights Law § 62 [1].)
Petitioner makes no such showing here. If anything, the other parent of petitioner’s daughter is in all too frequent contact with petitioner.
*652 Although the record, indicates the father has been convicted of “crimes,” it is unclear whether he has, as yet, been convicted of a felony. (Doe affidavit, Nov. 19, 2003, exhibit 1.) Upon his conviction for a felony and sentence in a state correctional facility for longer than a day, Civil Rights Law § 79 (1) would deprive him of “all” his civil rights for the sentence’s duration, regardless of parole. (See Matter of Petras, 123 Misc 2d at 667.) The father’s rights to notice of the petition to change his daughter’s surname from his to another surname and to an opportunity to appear before the court prior to it authorizing the name change are thus among the rights suspended by a felony sentence. (Civil Rights Law § 62 [1]; § 79 [1]; Matter of Petras, 123 Misc 2d at 667-668; see Matter of Fein, 51 Misc 2d at 1015.)
While the court could exercise its inherent power to give notice of a child’s name change petition to a parent who has lost his rights to such notice, that power derives not from those lost rights, but from the requirement to determine whether the name change will promote the child’s, interests. (Civil Rights Law § 63.) If information from the affected parent might assist that determination, the court might invite the input through notice to the parent. (Matter of Fein, 51 Misc 2d at 1015; Matter of Petras, 123 Misc 2d at 668.)
Where a parent objects to the name change or even where no notice is given, but in recognition that parental rights have not been terminated, a child’s interests may dictate that a change in her surname, particularly from the objecting or absent parent’s surname to another, wait until the child is mature enough to change her name on her own or at least to understand the proceeding. (Matter of Fein, 51 Misc 2d at 1016; Matter of Petras, 123 Misc 2d at 671-673.) Here, petitioner’s daughter is less than two years old.
Here, however, whether the father is entitled to notice or given notice in any event, it is difficult to conceive of what persuasive objection he could make to changing his daughter’s name to her mother’s name or what interest of the child would be promoted by denying the request. He could petition to change his daughter’s name back to his, should the daughter reside with him or depend on him for support, care, and guidance, for example. (See State of New York ex rel. Spence-Chapin Servs. to Families & Children v Tedeno, 101 Misc 2d 485, 489 [Sup Ct, NY County 1979].) She also could change her name back to his upon reaching the age of majority. In this enlightened age, even a father who provides support, care, and guidance to his daugh *653 ter has no more compelling claim that she bear his surname than a supporting, caring, and guiding mother has that her daughter bear the mother’s surname. (See Cohan v Cunningham, 104 AD2d 716 [4th Dept 1984]; State of New York ex rel. Spence-Chapin Servs. to Families & Children v Tedeno, 101 Misc 2d at 488; Matter of Sakaris, 160 Misc 2d at 663.) Many children now bear the different surnames of both parents. Other children, particularly if conceived through a sperm donor, do not know their biological father’s identity and bear their mother’s surname. Here, the mother’s son, whose father is deceased, already bears his mother’s surname. (See Matter of Sakaris, 160 Misc 2d at 666.) Any stigma tradition may have attached to “deprivation” of a father’s surname has dissipated. (Matter of Fein, 51 Misc 2d at 1016; Matter of Petras, 123 Misc 2d at 672; see Matter of Goldstein, 104 AD2d 616 [2d Dept 1984].)
Here, the father’s identity is known, and nothing indicates his parental rights have been terminated, but the record demonstrates that any relationship he may have enjoyed with his daughter has eroded. He is not supporting her, nor does the record indicate he has offered to support her or previously supported her. (Matter of Fein, 51 Misc 2d at 1016, 1018; Matter of Sakaris, 160 Misc 2d at 660.) Although he has attempted to communicate with her mother, his articulated motive is disturbingly contrary to any normal continuing interest in or desire to associate with his daughter. (Matter of Sakaris at 660, 664; see Matter of Petras, 123 Misc 2d at 672-673.) The primacy of his parental rights has given way to abuse and other misconduct which, even if not specifically directed at his daughter, is likely to have an adverse and dramatic secondary impact on her. (Matter of Petras at 671; see Matter of Fein, 51 Misc 2d at 1016-1017.)
In view of the father’s “gross misconduct and the most flagrant violations of his duties as a . . . father” (Matter of Fein, 51 Misc 2d at 1018), for purposes of disputing the mother’s request to change their daughter’s name, the father may be considered to have “abandoned” his rights under Civil Rights Law § 62 (1). (Matter of Fein, 51 Misc 2d at 1017; Matter of Sakaris, 160 Misc 2d at 660.) If anything, the continued use of his name may stigmatize his daughter, as well as adversely affect her physical welfare. (State of New York ex rel. Spence-Chapin Servs. to Families & Children v Tedeno, 101 Misc 2d at 487; see Matter of Goldstein, 104 AD2d 616 [1984]; Matter of Fein, 51 Misc 2d at 1017-1018.)
*654 Considering the father as thus having positioned himself similarly to other parents who have lost their rights (see Civil Rights Law § 79-a), no perceivable information from him would assist in determining whether the name change will promote the child’s interests (Civil Rights Law § 63), so as to prompt a notice to him inviting his input. (Matter of Fein, 51 Misc 2d at 1015; Matter of Petras, 123 Misc 2d at 668.) To the contrary, inviting the father’s input is likely to incite an unacceptable risk of danger to the mother and children. These circumstances are equivalent not only to the father having lost his rights, but also to the circumstances recognized as making notice to the father impossible. (Civil Rights Law § 62 [1]; Matter of Conde, 186 Misc 2d at 789-790.) Based on the evidence of danger to petitioner and her children, the father of the petitioner’s daughter cannot be located and contacted without jeopardizing the safety of petitioner, her daughter, and her son.
In addition, given the father’s conduct, he is not “due” any further “diligence” as required by Civil Rights Law § 62 (1) in an effort to locate him. Viewed another way, to provide the father notice of the petition to change the child’s name would be so unacceptably dangerous as to render notice irresponsible, also lacking the statutory “diligence.” (Civil Rights Law § 62 [1].) Finally, notice would defeat the purpose of section 64-a, the exemption from publication to which petitioner and her children are entitled.
In sum, where the source of physical danger entitling a person whose name is to be changed to the publication exemption (Civil Rights Law § 64-a) is the person’s parént, and that parent, by his conduct, effectively has abandoned his rights concerning his child, the only reasonable interpretation of Civil Rights Law § 62 (1) is to permit a similar waiver of notice to that parent. (Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals of Inc. Vil. of New Hempstead, 77 NY2d 114, 124-125 [1990]; Zappone v Home Ins. Co., 55 NY2d 131, 137 [1982]; Matter of Statewide Roofing v Eastern Suffolk Bd. of Co-op. Educ. Servs., 173 Misc 2d 514, 518-519 [Sup Ct, Suffolk County 1997]; Matter of Commissioner of Social Servs. v Jessie B., 111 Misc 2d 617, 621-622 [Fam Ct, NY County 1981].) Only this interpretation gives meaning to both statutes. Otherwise section 62 (1) would inflict grave risk of physical danger and illogically permit perpetration of the very threats to physical safety section 64-a is designed to avoid, completely negating the latter statute’s effect. (Zappone v Home Ins. Co., 55 NY2d at 138; Statewide Roof *655 ing v Eastern Suffolk Bd. of Co-op. Educ. Servs., 173 Misc 2d at 518; Matter of Marino S., 181 Misc 2d 264, 275 [Fam Ct, NY County 1999]; Matter of Gabriel M., 128 Misc 2d 313, 317 [Fam Ct, Kings County 19853.)
IV Disposition
For all the reasons discussed above, the court thus dispenses with the requirement of Civil Rights Law § 62 (1) to give the father of petitioner’s daughter notice of the petition and an opportunity to appear before the court prior to it authorizing the daughter’s name change. As also set forth above, the court further exempts petitioner and her two children from the requirements of Civil Rights Law §§ 63 and 64 to publish petitioner’s and her children’s name changes and seals the records of this name change proceeding. The Clerk of this court shall transmit a copy of this decision and order and the accompanying name change order to the New York County Family Court Clerk, to be filed with the court’s records under Docket No. 0-12386-03. The portion of the Family Court record transmitted from this court also shall be sealed. The records of this proceeding in this court and in the Family Court may be opened only by a court order, at petitioner’s request, at the request of her daughter or son after the child reaches age 18 years, or upon evidence that the daughter’s father is deceased. (Civil Rights Law § 64-a.)