*845 OPINION OF THE COURT
Katherine A. Levine, J.
Plaintiff Prime Psychological Services, PC. and defendant American Transit Insurance Company stipulated at oral argument that the sole issue before the court was whether the defendant’s failure to issue the denial of claim form (N-F 10 form) “in duplicate” was a fatal error, thus precluding defendant from asserting a defense which would result in the granting of summary judgment to plaintiff. There is no dispute that plaintiff established a prima facie case and that defendant timely mailed its denial of claim form, setting forth the defense of lack of medical necessity, to plaintiff.[1] Defendant does not assert in its opposition that the claim forms were mailed in duplicate but simply states that the omission, if any, was neither “basic” nor “numerous” (citing Nyack Hosp. v Metropolitan Prop. & Cas. Ins. Co., 16 AD3d 564 [2d Dept 2005]).
This issue presents a case of first impression since it appears that no court has directly ruled upon whether to grant summary judgment to a plaintiff when the sole deficiency in the denial of claim form was that it was not issued in duplicate. As such, a statutory analysis of the Insurance Law and the pertinent regulations promulgated thereto is in order.
Article 51 of the Insurance Law (Comprehensive Motor Vehicle Insurance Reparations Act) (added by L 1984, chs 367, 805, as amended), commonly known as New York’s No-Fault Insurance Law (No-Fault Law), provides a plan for compensation of victims of motor vehicle accidents for economic loss without regard to fault or negligence. (Oberly v Bangs Ambulance, 96 NY2d 295 [2001].) The general framework for payment of first-party benefits is contained in Insurance Law § 5106 (a), which states as follows:
“(a) Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid *846 within thirty days after such proof is supplied. All overdue payments shall bear interest at the rate of two percent per month.”
The Superintendent of the New York State Insurance Department promulgated Regulation 68 and codified it under 11 NYCRR part 65. The pertinent regulation in this case, 11 NYCRR 65-3.8, entitled “Payment or denial of claim (30 day rule),” provides in subdivision (c) (1) that
“[i]f the insurer denies a claim in whole or in part involving elements of basic economic loss . . . the insurer shall notify the applicant ... on the prescribed denial of claim form, in duplicate, and shall furnish, if requested by the applicant, one copy of all prescribed claims form submitted by or on behalf of the applicant thereto” (emphasis supplied).
“The governing rule of statutory construction is that courts should look first to the statutory language in question, which is to be ‘generally given its natural and most obvious meaning.’ ” (Matter of Greenberg [Ryder Truck Rental], 70 NY2d 573, 577 [1987], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 94; Association of Contr. Plumbers of City of N.Y. v Contracting Plumbers Assn. of Brooklyn & Queens, Inc., 302 NY 495, 500 [1951].) “[I]f there is nothing to indicate a contrary intent, terms of general import will ordinarily be given their full significance without limitation.” (70 NY2d at 577, quoting Statutes § 114.)
The primary goal of the court in interpreting a statute is to determine and implement the legislature’s intent. (Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328, 335 [2003].) A court “may not reject a literal construction (of a statute) unless it is evident that a literal construction does not correctly reflect the legislative intent.” (A.J. Temple Marble & Tile v Union Carbide Marble Care, 87 NY2d 574, 580-581 [1996]; see Statutes § 73.) “[T]he legislative history of an enactment may also be relevant and ‘is not to be ignored, even if words be clear’ ” (Feher Rubbish Removal, Inc. v New York State Dept. of Labor, Bur. of Pub. Works, 28 AD3d 1, 5 [4th Dept 2005], quoting Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting Statutes § 124, Comment, at 252). A construction which would result in absurdity is to be rejected (Statutes § 145; see McDonald v State of New York, 176 Misc 2d 130, 134 [Ct Cl 1998]). Furthermore, “[i]n construing a statute, the court should consider the mischief sought to be remedied *847 and should favor the construction which will suppress the evil and advance the remedy.” (Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 677 [3d Dept 1981]; Marigliano v New York Cent. Mut. Fire Ins. Co., 15 Misc 3d 766, 771-772 [Civ Ct, NY County 2007].)
Therefore, despite the primary importance of literal construction, “[t]he courts may in a proper case indulge in a departure from literal construction and . . . sustain the legislative intention although it is contrary to the literal letter of the statute” (Feher Rubbish Removal, Inc. at 5, quoting Statutes § 111). “The letter of a statute is not to be slavishly followed when it . . . leads to conclusions, inconsistent with the general purpose of the statute or to consequences irreconcilable with its spirit and reason.” (Matter of Statewide Roofing v Eastern Suffolk Bd. of Coop. Educ. Servs., First Supervisory Dist. of Suffolk County, 173 Misc 2d 514, 517 [Sup Ct, Suffolk County 1997].) Thus, in construing a law, a court “will sometimes be guided more by its purpose than its phraseology, whereby a statute is not to be read with a literalness that destroys the meaning, intention, purpose or beneficial end for which the statute has been designed.” (Id.; see generally Statutes § 96.) In fact, the meaning of certain words may, in a proper case, be restricted or limited so as to avoid “absurd, unjust or other objectionable results.” (Matter of Statewide Roofing at 518; see Statutes § 113.)
It is imperative in ruling upon no-fault insurance matters not to lose sight of the fundamental goal of the regulatory scheme, which is “designed to promote prompt payment of legitimate claims” (Nyack Hosp. v General Motors Acceptance Corp., 8 NY3d 294, 300 [2007]) and prompt resolution of injury claims, to limit cost to consumers and to alleviate unnecessary burdens on the courts. (Pommells v Perez, 4 NY3d 566 [2005]; see also Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 285 [1997] [“The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices”]; All Health Med. Care v Government Empls. Ins. Co., 2 Misc 3d 907, 910 [Civ Ct, Queens County 2004] [the purpose of the no-fault statute is to encourage prompt payment of claims, to discourage investigation by insurers and to penalize delays].)
As the Court of Appeals noted in Matter of Medical Socy. of State of N.Y. v Serio (100 NY2d 854 [2003]), the most significant *848 changes made by the Superintendent of Insurance, in adopting revised Regulation 68 (repealing and replacing the prior 11 NYCRR part 65),[2] was a reduction in the time frames applicable to the filing of notices and proofs of claim — a consequence of the Superintendent’s determination that much of the abuse was associated with the lengthy time frames within which claims could be presented to insurers. The Superintendent also concluded that the shorter time frames would better effectuate the legislative purpose of providing prompt compensation “as the loss is incurred, while reducing rampant abuse.” (Id. at 867; Inwood Hill Med. at *4.) Accordingly, it is the court’s duty to interpret and apply the no-fault regulations in a consistent manner leading to the prompt payment of valid, documented claims. (See Marigliano v New York Cent. Mut. Fire Ins. Co. at 774.)
With these principles in mind, this court finds that the defendant’s failure to mail the N-F 10 form in duplicate is not fatal and does not render its denial a nullity. It should first be noted that contrary to plaintiff’s contention, no court has declared that a denial of claim form is fatally defective so as to warrant its preclusion solely on the grounds that it was not issued in duplicate. In New York Univ. Hosp. Rusk Inst, v Hartford Acc. & Indent. Co. (32 AD3d 458 [2d Dept 2006]) the plaintiff attacked the validity of the defendant’s denial, both because the defendant issued its partial denial by letter rather than by utilizing the prescribed N-F 10 form, and because the denial was not issued in duplicate. While finding that the denial letter adequately conveyed the information mandated by the prescribed N-F 10 form, the court still found the denial to be defective because “defendants failed to establish that the letter had been issued in duplicate and approved by the Department of Insurance.” (Id. at 460.) The Rusk court did not discuss plaintiffs failure to serve the denial in duplicate. Furthermore, Rusk has only been cited for the proposition that the N-F 10 denial form was not sufficiently specific or particular to apprise the claimant of the grounds upon which the disclaimer is predicated and, hence, could not constitute a valid denial. (See Westchester Med. Ctr. v Allstate Ins. Co., 45 AD3d 579 [2d Dept 2007]; Elmont Open MRI & Diagnostic Radiology, RC. v GEICO *849 Ins. Co., 18 Misc 3d 1117[A], 2008 NY Slip Op 50113[U] [Nassau Dist Ct 2008] [N-F 10 denial form issued by respondent, neither on the prescribed form as it existed in 2005, nor on the form allegedly approved by the Insurance Department in 2002, was not valid since neither old nor new regulations permit an insurer to adjust or amend its forms on its own accord]; Olympic Chiropractic, P.C. v American Tr. Ins. Co., 14 Misc 3d 129[A], 2007 NY Slip Op 50011[U] [App Term, 2d Dept 2007].)
In fact, the source for the Rusk court’s pronouncement concerning the sufficiency of the N-F 10 denial form was Nyack Hosp. v State Farm Mut. Auto. Ins. Co. (11 AD3d 664, 665 [2d Dept 2004]), where the Second Department declared that “[a] proper denial of claim form must include the information called for in the prescribed denial of claim form (see 11 NYCRR 65-3.4 [c] [11]) and must ‘promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated.’ ” Furthermore, “[a] timely denial alone does not avoid preclusion where said denial is factually insufficient, conclusory, vague or otherwise involves a defense which has no merit as a matter of law” (Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d 43, 44 [App Term, 2d Dept 2004]).
In Nyack (supra), the court found the denial of claim form to be fatally defective in that it failed to include a number of the basic items called for in the prescribed form, such as the name of the health services provider, the date and amount of the claims being denied, and the date it received those claims. In Amaze (supra), the timely denial was found to be factually insufficient in that defendant failed to provide any specifics with regard to its conclusory defense that certain of the medical equipment was duplicative. Both of these cases found that preclusion was warranted because the content of the N-F 10 forms was not sufficiently specific.
There appears to be one case where a court addressed the repercussions that should attach to a party’s failure to serve a form in duplicate. In Nagy v Rothstein (53 Misc 2d 367 [Sup Ct, NY County 1966]) the defendant moved to dismiss the complaint because a notice of claim was never served and the complaint, which was not served in duplicate as required of a notice of claim, could not substitute for a notice of claim. The complaint, however, was served within the 90-day time period governing the service of a notice of claim. The court granted the plaintiffs motion to treat the complaint, as originally served, as a notice of claim because the original complaint met all the statutory *850 requirements of a notice of claim except that it did not set forth the plaintiff’s post office address and was not served in duplicate. The court first noted that it looks to the “substance of the paper served and not to its label,” and found that in accordance with the purpose behind the “notice of claim,” defendant “had due and timely notice of the incident and ample time to conduct its investigation.” (Id. at 369 [emphasis supplied].) As to the defendant’s assertion that no court has ever allowed a complaint to serve as both a notice of claim and a complaint, i.e., one paper served in place of two, the court stated that it “does not count the papers. It looks rather to their merit and their substance. No litigant who states a cause of action will be turned away by mistakes in labeling or in his counting of the papers required to be served.”[3] (Id.)
The same reasoning applies to the instant matter. Plaintiff does not claim that the information contained in the N-F 10 was “insufficient, conclusory, vague or otherwise involves a defense which has no merit as a matter of law.” Nor does plaintiff contend that it was deprived of prompt specific notice as to the reasons for the insurer’s denial or that it was prejudiced because it only received one copy of the N-F 10. In fact, since the regulations set forth that both the original N-F 10 form and its duplicate shall be served on the medical provider, the service of the duplicate N-F 10 is basically redundant. As such, plaintiff’s contention that it must be awarded summary judgment because the denial was not issued in duplicate runs counter to the very legislative intent behind the No-Fault Law — to process claims within a short time frame and expeditiously so as to avoid prejudice and red tape dilatory practices.
As such, both plaintiffs and defendant’s motions for summary judgment are denied and this case is to proceed to trial.

. Defendant commenced this motion requesting that the action be dismissed because plaintiff failed to rebut defendant’s denial of its claim on the grounds of lack of medical necessity. Plaintiff, in turn, brought a cross motion contending that it was entitled to summary judgment because defendant failed to establish that it had mailed the denial forms in duplicate, hence rendering its denial a nullity.

. For a detailed analysis of the history behind the amended Regulation 68, see Matter of Medical Socy. of State of N.Y. v Serio (100 NY2d 854, 860-864 [2003]) and Inwood Hill Med. v Allstate Ins. Co. (3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U] [Civ Ct, NY County 2004]).

. While discussing the number of papers, the court never specifically addressed the fact that the complaint quo notice of claim was not served in duplicate. However, by granting plaintiff’s motion for leave to serve an amended notice of claim and an amended complaint, the court obviously did not find the failure to serve the papers in duplicate to be fatal.