[920 NYS2d 216]

In the Matter of MARIAH RUBY EBERHARDT. MICHELLE I. ESQUENAZI, Appellant; JOHN EBERHARDT, Respondent.

Second Department, March 29, 2011

**APPEARANCES OF COUNSEL**

*Kenneth J. Weinstein*, Garden City (*Michael J. Langer* of counsel), for appellant.

*Allen E. Huggins*, Kings Park, for respondent.

*Leonard B. Symons*, Williston Park, attorney for the child.

**OPINION OF THE COURT**

CHAMBERS, J.

### Introduction

On this appeal we take the opportunity to clarify the law on a proposed infant name change, particularly as it pertains to a hyphenation of a child's surname to include the last names of both parents.

Michelle I. Esquenazi (hereinafter the mother) and John Eberhardt (hereinafter the father) are the parents of now nine-year-old Mariah (hereinafter the child). When the child was

conceived, the parties had been in a committed relationship for a number of years and lived together along with the mother's three children from a prior marriage.[1] The parties had been planning on marrying at the time but decided to postpone the wedding until after the child's birth. The child was born, and she was given the father's surname, as reflected by the child's birth certificate and the acknowledgment of paternity. A wedding never took place. Approximately 1½ years after the child's birth, the father moved out of the parties' home. The mother maintained physical and legal custody of the child, with the father visiting her regularly, an arrangement later sanctioned, with their consent, by the Family Court.

In 2008, the mother petitioned the Supreme Court for permission to change the child's surname by hyphenating the father's surname with the mother's surname. The impetus for the change was the mother's use of both parties' surnames on the child's application for a passport. The father, before signing the application, redacted the mother's surname. The mother reinserted her surname and filed the application, leading the father, once he saw the child's passport, to contact federal officials and ask that the passport reflect her legal name.

The mother moved for summary judgment on the petition, and the Supreme Court ordered a hearing (see CPLR 409).[2]

## The Hearing

### The Mother's Case

At a hearing on the petition, the mother testified that during her pregnancy, she and the father "discussed" the child having both parties' last names. Although only the father's surname was used on the child's birth certificate, an announcement of the child's birth used both parties' surnames.

At 2½ years of age, the child was baptized into the Lutheran Church. Leading up to the baptism, the parties had discussed using both parties' surnames, as the mother wanted the child to identify with both parents and to share the surnames of her maternal and paternal half-siblings.[3] The parties attended the baptism, and the pastor announced the child to the congrega-

---

1. The mother had previously been granted permission to change the surname of her three children to her surname when their father left them.

2. As part of the mother's motion for summary judgment, she presented evidence that the child was known by her hyphenated name, as indicated by her pediatrician and school records, and a letter from her babysitter.

3. The father has three children who visit with the child often.

tion as Esquenazi-Eberhardt. The baptismal certificate, which the father saw, reflected the child's surname as a combination of the parties' surnames. The father did not object to the child's surname.

The child was enrolled in preschool, registered as Esquenazi-Eberhardt, and again under the same hyphenated surname when she started kindergarten. The father attended various school functions, including the child's graduation from preschool to kindergarten, and then kindergarten to the first grade, where the parties' hyphenated name was used during the roll-call of graduates, in pamphlets announcing the graduates, and graduation certificates, all without objection from the father.

At around four years of age, the child began to write her hyphenated name. In school, on important tests or pieces of artwork, the child would write out both full surnames, while on informal assignments she abbrieviated the hyphenated surname to "E.E." The child, the mother related, very proudly and happily uses the hyphenated surname.

It was the child's self-identification as Esquenazi-Eberhardt that the mother offered as a reason why the name change would promote the child's best interests. The hyphenated name gave the child a connection with both parents, her paternal and maternal half-siblings, and her ethnic heritage, Cuban-American on the mother's side, and Native-American on the father's side. The mother had never and would never seek to eliminate the father's last name. The child, the mother told her, was half of her mother and half of her father.

The Father's Case

The father testified that when the child was born, there was never really any conversation about the child's last name. It was simply a given that she would have only his surname, as the parties were planning on marrying and he was the father.

The father denied ever seeing or hearing the child's hyphenated surname used in the birth announcement, at the baptism, or at school events such as the child's graduation from kindergarten and, if he attended, preschool. He claimed that he never acquiesced to the child using both surnames. On both the custody and support orders, the child had only the father's surname. The father testified that the first time he saw the hyphenated surname used was when the mother filled out a passport application. The second time, the child came to the father's home with a report card that contained the mother's

surname, with the father's surname penciled in next to it. The mother explained, when he questioned her, that the school had made a mistake, using the mother's surname because one of her other children attended the same school. The mother told him that she would have it corrected.

The father claimed that he had seen the child use the hyphenated surname in writings, but that was after he objected to her using it.

Asked why he objected to the proposed name change and why retaining the child's current surname would promote her best interests, the father answered,

> "Moralistic values, traditional values. Her name is and always was legally Mariah Ruby Eberhardt and I don't see any reason or need for it to be changed. It was never agreed upon between the mother and myself, and I think the lesson that's learned from being able to make anything, anything you want, any time you want to, is really a deviation of values and morals that should be instilled in a child."

The father believed that a hyphenated name announced to the world that the child came from a broken relationship. He asserted that the questions that would come from her hyphenated surname would be a source of embarrassment.

The father acknowledged that it was important for the child to identify with both parents, but it was also important "to learn to tell the truth and follow the rules." If the child told him she wanted to use both surnames, he would still love her, but that decision "wouldn't come to being without brainwashing."

### *Lincoln* Hearing

The Supreme Court conducted an in-camera interview with the child, the contents of which are confidential and will not receive further comment (*see Matter of Lincoln v Lincoln*, 24 NY2d 270 [1969]).

### The Order Appealed From

The Supreme Court denied the mother's motion for summary judgment, denied the petition, and dismissed the proceeding.

The Supreme Court found that the father had reasonable objections to the name change. He was involved in the child's life. He visited with her, provided her with emotional and

financial support, and included her in his extended family. The Supreme Court indicated that in the absence of misconduct, abandonment, or lack of support, the application should not be granted.

Further, the Supreme Court concluded that the mother had failed to establish that the proposed name change was in the child's best interests. The Supreme Court credited the father's testimony that he never acquiesced in the use of the hyphenated name for the child, noting that the father objected to the use of the hyphenated name on the child's passport application, as well as when the passport was issued in the hyphenated name. The use of the hyphenated name, the Supreme Court found, appeared to promote the interests of the mother, and not the child. Were the mother's petition to be granted, it would reward her for her unilateral action in teaching the child to identify herself with a hyphenated name, and such would be contrary to the child's best interests. Any claim that the child would be confused were she required now to use the surname given to her at birth was speculative. In any event, even if she was confused, it would be only temporary.

Despite having knowledge of the proper procedure for effecting a change in the child's surname, the Supreme Court concluded, the mother resorted to self-help by enrolling the child in school under the hyphenated name and generally holding her out under that surname. In so doing, the Supreme Court indicated, the mother contravened the Civil Rights Law and the rights of the father and child.

## Analysis

Civil Rights Law § 63 authorizes an infant's name change if there is no reasonable objection to the proposed name, and the interests of the infant will be substantially promoted by the change.

### Reasonable Objection

At the hearing, while the father raised objections to the proposed name change, they were not reasonable. Indeed, his concerns had no relation to the best interests of the child, nor did they bear on his relationship with the child (*see Matter of John Phillip M.-P.*, 307 AD2d 318, 318-319 [2003] [noting that sharing of surname with custodial parent is a legitimate point of concern]; *Matter of Caraballo*, 13 Misc 3d 1229[A], 2006 NY Slip Op 52054[U] [2006] [holding that 14-year-old child, who had used his mother's surname all his life, had a vested interest

in retaining his mother's surname]). The father's objections were directed toward the mother, for her having unilaterally taught the child to identify with both parents' surnames. The father sought to teach the mother a lesson "to follow the rules," presumably meaning that she should have first consulted with him or petitioned the court before teaching the child to use the hyphenated surname. We do not condone the mother's action in effectively endeavoring to change the child's name without the imprimatur of a court, when knowing how to lawfully do so, although it is undisputed that the mother never sought to eliminate the father's surname and substitute her own surname (*see Matter of John Philip M.-P.,* 41 AD3d 720, 721 [2007]). But it is not reasonable to deny the petition in order to teach the mother a lesson or to punish her to the detriment of the child by preventing the child from legally using the hyphenated surname with which she now identifies. For the same reason, contrary to the father's contention, equity should not intervene to estop the proposed name change because of the mother's unilateral conduct (*see Matter of Charles v Charles,* 296 AD2d 547, 549 [2002] [noting that the doctrine of equitable estoppel will be applied only where its use furthers the best interests of the child]).

The Supreme Court, in discussing whether the father's objections were reasonable, noted that the father exercised parenting time and was a part of the child's life, supporting her financially and emotionally. Further, the Supreme Court noted that, absent misconduct, abandonment, or lack of support by the father, applications to change an infant's surname were not granted. However, the Supreme Court's reliance on cases where the mother was seeking to change the child's surname from the father's last name to that of the mother was misplaced, as the mother in this case is not seeking to eliminate the father's surname (citing *Matter of Goldstein,* 104 AD2d 616 [1984] [mother sought to deprive the child of the father's surname by changing it to her maiden name]; *Matter of Trevellian v Wilson,* 19 Misc 3d 137[A], 2008 NY Slip Op 50866[U] [2008] [mother sought to change the child's surname from that of the father to her surname]; *Matter of Grier,* 5 Misc 3d 1011[A], 2004 NY Slip Op 51332[U] [2004] [in two separate applications for a name change, one mother was seeking to change the child's surname from that of the father to her surname, and the other mother sought to eliminate the father's surname from the child's hyphenated name]). Certainly a parent's misconduct, abandonment, or lack of support is relevant in any proposed name

change case (*see Matter of Altheim*, 12 AD3d 993, 993-994 [2004]), but where the mother is merely seeking to add her last name and not to eliminate the father's name, the fact that the father supports the child should not preclude the proposed change.

■ To the extent the father's objection was based on traditional values, meaning that it is Anglo-American custom to give a child the father's name (*see Gubernat v Deremer*, 140 NJ 120, 129-137, 657 A2d 856, 860-865 [1995]; *In re Marriage of Schiffman*, 28 Cal 3d 640, 643, 620 P2d 579, 581 [1980]; *Rio v Rio*, 132 Misc 2d 316, 317-322 [1986]), the objection is not reasonable, because neither parent has a superior right to determine the surname of the child (*see Swank v Petkovsek*, 216 AD2d 920 [1995]; *Matter of Bell v Bell*, 116 AD2d 97, 99 [1986]; *Matter of Cohan v Cunningham*, 104 AD2d 716 [1984]; *Rio v Rio*, 132 Misc 2d at 319). Moreover, as noted, the objection must relate to the child's best interests or bear on the parent's relationship with the child, and the father failed to articulate, nor could he, how the patronymic custom was relevant to either of those concerns.

Finally, contrary to the father's testimony at the hearing, the use of the child's hyphenated name does not announce to the world that she comes from a broken family, as some married couples choose to give their child a hyphenated surname. More importantly, we do not accord preference to paternal surnames in the context of determining the bests interest for the child (*see Gubernat v Deremer*, 140 NJ at 141, 657 A2d at 867).

Best Interests

As in any case involving the best interests standard, whether a child's best interests will be substantially promoted by a proposed name change requires a court to consider the totality of the circumstances (*see Matter of John Philip M.-P.*, 41 AD3d at 721; *Matter of David Robert T.*, 10 AD3d 453 [2004]; *Matter of Cinquemani v Guarino*, 290 AD2d 554 [2002]; *see generally Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]).

Among the myriad of factors or circumstances that a court may consider in determining whether a proposed name change substantially promotes the child's best interests, there are several that warrant special mention: (1) the extent to which a child identifies with and uses a particular surname; (2) the child's expressed preference, if of sufficient age and maturity to articulate a basis for preferring a particular surname; (3) whether the child's surname differs from the surname of the

custodial parent; (4) the effect of the proposed name change on the child's relationship with either parent; (5) whether the child's surname is different from any of her siblings and the degree to which she associates and identifies with siblings on either side of her family; (6) whether the child is known by a particular surname in the community; (7) the misconduct, if any, of a parent, such as the failure to support or visit with the child; and (8) the difficulties, harassment, or embarrassment that the child may experience by bearing the current or proposed surname (*see Matter of John Phillip M.-P.*, 307 AD2d at 318-319; *Gubernat v Deremer*, 140 NJ at 141-142, 657 A2d at 867-868; *In re Wilson*, 162 Vt 281, 285, 648 A2d 648, 651 [1994]; *In re Andrews By & Through Andrews*, 235 Neb 170, 177, 454 NW2d 488, 492 [1990]; *Bobo v Jewell*, 38 Ohio St 3d 330, 335, 528 NE2d 180, 185 [1988]; *In re Marriage of Schiffman*, 28 Cal 3d at 647, 620 P2d at 583).

This list is by no means exhaustive, and the factors a court may consider are only limited to the extent a particular factor or circumstance bears no relation to the child's best interests.

The mother contends that, before these factors are applied, the father should be equitably estopped from challenging the proposed name change because he acquiesced in the use of the hyphenated surname. However, the Supreme Court concluded, based on its assessment of the parties' credibility, that the father had not acquiesced. The Supreme Court's credibility determination is entitled to deference on appeal (*see e.g. Matter of Brass v Otero*, 40 AD3d 752 [2007]). While it strains the bounds of credulity to believe that the father never heard or saw the child's hyphenated surname used in the birth announcement, at the baptism, or at school events such as the child's graduation from kindergarten and, if he attended, preschool graduation, given the father's strenuous objections when he saw the hyphenated name used on the child's passport application and report card, we decline to disturb the Supreme Court's determination on that issue. In any event, as briefly noted earlier, the doctrine of equitable estoppel will be applied only where its use furthers the best interests of the child, and unless the father's acquiescence demonstrates that he believed the name change substantially promoted the child's best interests, it is not relevant (*see Marilyn C.Y. v Mark N.Y.*, 64 AD3d 645, 646 [2009]; *Matter of Charles v Charles*, 296 AD2d at 549).

█ Considering these factors then, and the fact that the mother is seeking only to add her surname to the child's cur-

rent surname, this is not a difficult case. The proposed name change to hyphenate the child's surname to include both parents' last names substantially promotes the child's best interests. The child considers her last name to be Esquenazi-Eberhardt as evidenced by, among other things, the fact that she regularly writes the hyphenated name. The child has been using the hyphenated name for a number of years, and she is generally known in the community by her hyphenated name. Thus, to require the child now to revert back to the surname given to her at birth may cause her difficulties, harassment, or embarrassment. The use of the hyphenated name will be a symbolic reminder of, and source of identification and association with, both her father and her mother, the mother having always been the child's custodial parent. The hyphenated name will also be a reminder of the ethnic heritage of both parents, as well as her half-siblings on each side (*see Matter of John Philip M.-P.*, 41 AD3d at 721; *In re Andrews By & Through Andrews*, 235 Neb at 170, 454 NW2d at 488).[4]

Accordingly, because there is no reasonable objection to the proposed name, and the interests of the child will be substantially promoted by the change, the petition is granted (*see Matter of John Philip M.-P.*, 41 AD3d at 721).

Accordingly, the order is reversed insofar as appealed from, on the law, the petition is granted, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an order in accordance with Civil Rights Law § 63.

PRUDENTI, P.J., DILLON and BALKIN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the petition is granted, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an order in accordance with Civil Rights Law § 63.

---

4. The attorney for the child supports the proposed name change, a position entitled to some weight (*see Matter of Ciccone v Ciccone*, 74 AD3d 1337, 1339 [2010]).