OPINION OF THE COURT
Lisa M. Fisher, J.
*689 On July 2, 2015, this court granted petitioner JR’s (hereinafter mother) application to change her child, BLK’s (hereinafter infant), last name from K to R. Mother’s application averred she had sole legal and physical custody of the infant and was responsible for taking the infant to her doctors’ appointments, surgeries, daycare, sports events, and other regular activities. She further claims that respondent[1] JK (hereinafter father) only sees the infant two to four times a month, at his own choice, and has been otherwise uninvolved.
Another ground for the name change the mother provided in the petition was the fear of violence against her and her daughter by an individual whom the father had a physical altercation with. That individual lives near her and the infant. This individual has a violent history and had received a prison sentence for the assault on the father. Hence, mother wanted to change the infant’s last name to avoid name recognition in the community by the violent individual.
Father subsequently learned of the name change application and argues that he has not received notice of the name change application as required by the law. Father further argues that, under the order of custody and visitation signed by Supreme Court (Pulver, Jr., J.), “all contracts concerning the child shall be signed by both parents!,]” he did not sign the application and, thus, the name change is void. Father claims that at no time did he consent to the infant’s name change. Additionally, he argues that many of mother’s claims are patently false in the petition, including her fear of violence against her and the infant. He also claims that he regularly sees the infant.
Mother avers that she did serve the proper notice on father, and provided a backdated affidavit of service from her mother. She also provided a printout from the Division of Child Support Enforcement evincing that father owes, as of October 28, 2015, arrears in the amount of $12,453.05 for child support.
Name change applications are governed by article 6 of the Civil Rights Law. Section 62 provides the notice requirement, and subdivision (1) requires the petition to change the name of an infant made by one parent to be served on the other parent, if he be living. Here, while mother has provided a backdated affidavit of service—which is still presumably valid—the court finds father has raised a question of fact as to the credibility of the affidavit of service and whether notice was properly *690 provided. Thus, the court is not satisfied the required notice under Civil Rights Law § 62 (1) was provided to the father.
While father contends that this is grounds for vacatur, the court does not find this to be automatic. First, this is because vacatur under CPLR 5015, which father’s papers do not reference the legal standard but appear to rely on, requires a reasonable excuse and a meritorious defense. (See Mothon v ITT Hartford Group, 301 AD2d 999, 1000-1001 [3d Dept 2003], citing CPLR 5015 [a] [1], and quoting Frank v Martuge, 285 AD2d 938, 939 [3d Dept 2001].) Father has demonstrated a reasonable excuse, namely that he was not served notice of the application.
However, the meritorious defense requirement creates a closer question. There are two previous court orders limiting father’s rights. The first is of Supreme Court (Pulver, Jr., J.) dated July 30, 2012, which granted mother sole legal custody and sole primary residential custody. The caveat was that the order required mother to consult with father “on issues involving health, education and religion” of the infant. A name change application does not involve any of those issues, nor has father argued it fits into one of those provisions. Rather, father argues that the order requires all contracts concerning the infant to be signed by both parents. However, a name change application is unequivocally not a contract, and this provision also does not apply.
When the court held a conference in October 2015,[2] father indicated to the court that he will be seeking to modify Supreme Court’s order to obtain joint legal custody, thus mother would not be permitted to unilaterally change the infant’s name. At that time, the court found this to be speculative and unpersuasive, as the modification had not occurred and there was no guarantee that it would.
This was the impetus for the second order, which was issued from Family Court (Wilhelm, J.) and signed on a day later in October 2015.[3] This order similarly provided that mother has legal custody and primary physical custody of the infant, and father only has visitation time. Essentially, no modification was granted. In his moving papers, father omitted reference to this second order or that an adverse decision was rendered; it was attached by mother in her opposition papers.
*691 Thus, the court has not found any prior orders (1) requiring mother to notify father of a name change, (2) stating that father is required to consent to a name change, or (3) stating that mother was prohibited or otherwise required to notify father of a name change.
The court also observes that, while article 6 of the Civil Rights Law requires the parent petitioning the name change to provide notice to the other parent, nowhere in the Civil Rights Law does it require the non-moving parent to consent. Said differently, all the law requires is mother to provide father notice of the name change application—it does not require father to consent to such change.
Thus, assuming arguendo that the mother failed to provide father notice under Civil Rights Law § 62 (1), the court notes that Civil Rights Law § 63 still authorizes the court to grant a petition to change a child’s name where it is satisfied that “there is no reasonable objection to the change of name proposed,” and that “the interests of the infant will be substantially promoted by the change.” Essentially, while it may be so that the lack of notice is a violation of Civil Rights Law § 62 (1), such violation may be a harmless error, which still warrants the name change.
Father cites to numerous cases—almost all from trial-level courts—which provide, for instance, “if a court were to accept as true the facts of a petitioning parent without proof of proper notice of the petition to the other parent, the court would, in effect, be affording the petitioning parent a superior right to determine the child’s name” (Matter of Mack, 15 Misc 3d 229, 231-232 [Sup Ct, Suffolk County 2007, Mayer, J.]). However, as evinced by the two prior orders, the mother does have rights superior to the father; she has sole legal and joint custody. The question becomes whether these superior rights are strong enough to permit mother to unilaterally change the infant’s surname.
To make this determination, courts have focused on the best interests standard articulated by Civil Rights Law § 63, specifically, “whether a child’s best interests will be substantially promoted by a proposed name change [which] requires a court to consider the totality of the circumstances” (Matter of Eberhardt, 83 AD3d 116, 123 [2d Dept 2011] [citations omitted]). The factors to consider as part of the totality of the circumstances test have been provided by the Appellate Division, and include the following:
*692 1. The extent to which a child identifies with and uses a particular surname;
2. The child’s expressed preference, if of sufficient age and maturity to articulate a basis for preferring a particular surname;
3. Whether the child’s surname differs from the surname of the custodial parent;
4. The effect of the proposed name change on the child’s relationship with either parent;
5. Whether the child’s surname is different from any of her siblings and the degree to which she associates and identifies with siblings on either side of her family;
6. Whether the child is known by a particular surname in the community;
7. The misconduct, if any, of a parent, such as the failure to provide support or visit the child; and
8. The difficulties, harassment, or embarrassment that the child may experience by bearing the current or proposed surname. (Eberhardt, 83 AD3d at 123-124 [noting that “(t)his list is by no means exhaustive, and the factors a court may consider are only limited to the extent a particular factor or circumstance bears no relation to the child’s best interests”], citing Matter of John Phillip M.-P., 307 AD2d 318 [2d Dept 2003] [other citations omitted].)
From the papers submitted by both parties during the pendency of this motion, the court finds issues of credibility and genuine issues of fact. Namely, both mother and father have inapposite contentions which cannot be resolved one way or the other merely based on the papers submitted alone. The factors noted above do appear to favor the name change, including the equities at play; it is uncontested that father is in child support arrears. In a practical sense, the court is granting father’s motion to vacate but only to the extent to hear the merits of the application and whether the previous decision and order granting the name change is in the best interests of the child.
Further, the court notes that the infant’s name has been changed pursuant to the prior decision and order to reflect the mother’s surname. Father’s application seeks an order immediately vacating the prior decision and order, which would effectively change the infant’s name back to his surname until the court can make the determination whether it is in the best *693 interests of the child. However, the court does not believe it is in the present best interests of the child to change her name back to the former surname of the father prior to the hearing, only to possibly change it back. Simply put, the court is not going to subject the infant to another name change back to the former name, only to possibly change it again back to the present name. Such back and forth is obviously not in the best interests of the child.
As such, the court is scheduling a hearing in this matter. Each party may call witnesses and submit evidence to the court for consideration if the petition’s proposed name change is in the best interests of the infant. If the parties so request, the court will hold a conference prior to the hearing to discuss what the court expects or possible settlement.
Moreover, the court notes that father has agreed in his papers to a hyphenated surname with both names present. Mother has not responded to this request. The court asks mother to seriously consider this option. Given the expenses of a hearing and the court’s present finding that the mother may have improperly served/failed to serve notice on the father in violation of Civil Rights Law § 62 (1)—which would require the mother’s deponent to be present at the hearing and to be subjected to both the father’s and the court’s questioning as to her credibility of backdating a sworn under the penalties of perjury affidavit—the court advises the parties to engage and consider father’s proposal of hyphenating the infant’s surname before going forward with the hearing. Should the parties reach settlement, they must submit notice of settlement immediately and the court will instruct how to proceed.
To the extent not specifically addressed above, the parties’ remaining contentions have been examined and found to be lacking in merit or rendered academic.
Thereby, it is hereby ordered that respondent JK’s motion to vacate is stayed, pending the findings of fact and issues of credibility to be determined by the court at a hearing; and it is further ordered that the infant’s present surname shall remain unchanged until further order of this court.
[NOTE: The court edited and modified this decision and order before submitting to publication. All names have been redacted for privacy purposes, including dates of conferences.]

. Even though he does not label himself as respondent, the court does so because the Civil Rights Law permits a reasonable objection to a name change petition which would be made by a respondent.

. Date removed for privacy purposes.

. Date removed for privacy purposes.