*524 OPINION OF THE COURT
Robert J. Muller, J.
Petitioner K.E.O., who is the mother of O.J.S. (XX/XX/2012) (hereinafter the infant), seeks to change the name of the infant to O.J.O. Petitioner contends that the interests of the infant will be substantially promoted by this name change. Specifically, petitioner states as follows:
“I have primary custody of [the infant], and support her fully on my own. Her father does not see her, ever, for his . . . scheduled visitations, [n]or is he paying child supprt [sic] for her. [The infant] will be starting school and I would like her to have the same name as [me] to avoid confusion on her part. Also to avoid confusion in the school because her father is not allowed to see her alone, he has supervised visits only that he does not follow through with.”
The infant’s father—M.S.—was given notice of the petition in accordance with Civil Rights Law § 62 (1). He submitted a statement in opposition to the name change, stating as follows:
“I understand there have been missed opertunities [sic] for me to spend time with [the infant]. It[’s] not exactly an ideal situation having my mother be the supervisor regarding her schedule and my personal situation. I currently do not have a car or a steady income, but I don’t feel that’s a reason to change [the infant’s] name. [S]he knows me as her father and when I do get to see her she runs to me every time screaming ‘Daddy.’ There is no confusion.”
The court directed petitioner and M.S. to appear on December 19, 2016 and, after hearing from each of them, appointed Elizabeth E. Little, Esq., as guardian ad litem for the infant (see CPLR 1202 [a]; Matter of Fleming, 13 Misc 3d 1225[A], 2006 NY Slip Op 51976[U], *1 [Sup Ct, Suffolk County 2006]). A letter order was then sent scheduling a second appearance for January 30, 2017 and directing the guardian ad litem to “meet individually with the infant and her parents prior to the appearance date.” The letter order further directed petitioner and M.S. “to cooperate fully with the scheduling of these meetings.”
The guardian ad litem submitted her report to the court on or about January 25, 2017, indicating that she met with petitioner and the infant on January 11, 2017. During this *525 meeting, the guardian ad litem spoke to the infant, who she found “to be a sweet, age appropriate child.” Upon being asked to tell the guardian ad litem her full name, the infant responded with the proposed name—O.J.O. Petitioner further indicated that the infant is known by O.J.O. “at both pre-school and at [her daycare].”
In her report, the guardian ad litem states that petitioner “was very cautious of saying anything negative about [M.S.] in the [infant’s] presence so [she] made arrangements to speak with [petitioner] privately.” During this private meeting, petitioner detailed her abusive relationship with M.S. Specifically, she stated that the two resided together when the infant was born but she moved out eight months later because M.S. “punched a hole in a door, picked [her] up, threw her out the front door and locked her out of the house [after they had] an argument about a dirty diaper.” Petitioner further stated that M.S. was ordered to have supervised visitation with the infant “after an incident in October of 2013 when [he] threatened to ‘blow his brains out’ if [petitioner] did not bring [the infant] to him immediately.” Finally, petitioner advised the guardian ad litem that M.S. has made only a few months of child support payments pursuant to a February 2016 order and has been largely absent from the infant’s life, seeing her only “five or six times in 2016.”
Finally, the report indicates that the guardian ad litem spoke with M.S. by telephone on January 6, 2017, but he “became very agitated during the phone call and stated that he [did not] need to prove anything to [her].” The guardian ad litem further states as follows:
“I told [M.S.] that I was not making any decisions or judgments but was gathering information so that I could share my impressions with the Court. At this point [M.S.] told me that he would see me in Court, used rude and derogatory language toward me and hung up the phone.”
The guardian ad litem never met with M.S. nor did she have any further contact with him. She ultimately concluded her report with a recommendation that the court grant the requested name change.
Following submission of the report, petitioner and the guardian ad litem appeared as scheduled on January 30, 2017. M.S., however, neither appeared nor contacted the court to request an adjournment.
*526 “As in any case involving the best interests standard, whether a child’s best interests will be substantially promoted by a proposed name change requires a court to consider the totality of the circumstances” (Matter of Eberhardt, 83 AD3d 116, 123 [2011] [citations omitted]; accord Matter of Denington [Schaeffer], 45 Misc 3d 1227[A], 2014 NY Slip Op 51735[U], *1 [Sup Ct, Suffolk County 2014]). Although not exhaustive, the following is a list of factors or circumstances that the court may consider in determining whether a proposed name change substantially promotes the child’s best interests:
“(1) the extent to which a child identifies with and uses a particular surname; (2) the child’s expressed preference, if of sufficient age and maturity to articulate a basis for preferring a particular surname; (3) whether the child’s surname differs from the surname of the custodial parent; (4) the effect of the proposed name change on the child’s relationship with either parent; (5) whether the child’s surname is different from any of her siblings and the degree to which she associates and identifies with siblings on either side of her family; (6) whether the child is known by a particular surname in the community; (7) the misconduct, if any, of a parent, such as the failure to support or visit with the child; and (8) the difficulties, harassment, or embarrassment that the child may experience by bearing the current or proposed surname” (Matter of Eberhardt, 83 AD3d at 123-124; accord Matter of Denington [Schaeffer], 2014 NY Slip Op 51735[U], *1; see Matter of Altheim, 12 AD3d 993, 993 [2004]).
Here, the infant uses the name “O.J.O.” and clearly identifies with it. “O.” is also the surname of petitioner, the infant’s custodial parent. Finally—and perhaps most significantly— M.S. has been largely absent from the infant’s life. He has not supported her either financially or emotionally. Indeed, he has made little effort to see her in the past 3V2 years and has made only a few months of child support payments. It must also be noted that—while he initially appeared relative to this proceeding—he then failed to cooperate with the guardian ad litem and further failed to attend a scheduled court appearance. Given the totality of the circumstances, the court finds that it is in the infant’s best interest to grant the requested relief and change her name from O.J.S. to O.J.O. (see Matter of Altheim, 12 AD3d at 993; Matter of Learn v Haskell, 194 AD2d 859, 860 [1993]).
*527 Ms. Little is hereby directed to submit her request for fees relative to her services as guardian ad litem to the court within 30 days of the date of this decision and order. The court will then review the request and issue a written determination as to the “reasonable compensation” to be awarded (CPLR 1204). Petitioner shall be responsible for this payment (see CPLR 1204).
Therefore, having considered the petition for child’s name change with certificate of live birth and acknowledgment of paternity attached thereto, verified June 3, 2016; statement of M.S., dated September 16, 2016; report of guardian ad litem, dated January 20, 2017; and amended report of guardian ad litem, dated January 25, 2017, it is hereby ordered that the infant O.J.S., having been born in the City of Glens Falls, County of Warren and State of New York, birth certificate No. xxx-xxxx-xxxxxxxx, shall be known by the name of O.J.O., which she is authorized to assume; and it is further ordered that the publication requirements outlined in Civil Rights Law §§ 63 and 64 are hereby waived pursuant to Civil Rights Law § 64-a; and it is further ordered that the record of this proceeding shall be sealed and shall be hereinafter opened only by order of the court for good cause show or at the request of petitioner; and it is further ordered that upon entry of this order and the papers on which it was granted in the office of the clerk of the County of Warren, the infant shall be known by the name O.J.O., which she is hereby authorized to assume, and by no other name; and it is further ordered that Elizabeth E. Little, Esq., shall submit her request for fees relative to her services as guardian ad litem to the court within 30 days of the date of this decision and order; and it is further ordered that, upon receipt and review of this request, the court will issue a written determination as to the reasonable compensation to be awarded to Elizabeth E. Little, Esq., for her services as guardian ad litem; and it is further ordered that petitioner shall be responsible for the payment of compensation to the guardian ad litem, as determined by the court.