Matter of Doe (G.I.C.R.) (2025 NY Slip Op 25133)

[*1]

Matter of Doe (G.I.C.R.)

2025 NY Slip Op 25133

Decided on June 4, 2025

Civil Court Of The City Of New York, Queens County

Kagan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on June 4, 2025
Civil Court of the City of New York, Queens County

In the Matter of the Application of Jane Doe, as Parent, 
 For Leave to Change the Name of G.I.C.R. to I.R.M.

Index No. NC-1435-24/QU 

Petitioner
Pro Se

Mark Kagan, J.

The petitioner, the mother and natural guardian of the subject infant has moved seeking to change the infant's name. The infant was born in 2016 in Queens County. On January 29, 2025 the court denied the petition with leave to renew on the grounds the petitioner had failed to serve the non-petitioning parent. The petitioner has now refiled the petition and provided an affidavit which states that she wishes to change the name of her daughter but is reluctant to contact the infant's father since the relationship between the two parents is strained. She further asserts that she does not know where he currently lives and, in any event, does not want him to know about the name change and in fact does not want him to know anything about her life or the life of their daughter. She also submitted a restraining order that was issued by the Family Court of Queens County on September 2, 2020 which prohibited the non-petitioning parent from any contact with the infant or the petitioner. The order of protection expired on September 2, 2022. The petitioner requests the court dispense with any notice requirements to which the non-petitioning parent is entitled and approve the name change.
The question that must be addressed is whether the court can approve of the infant's name change considering these facts.
Conclusions of Law
Civil Rights Law §62(1) states that a petition to change the name of an infant "must be served" upon both parents of the infant. The statute contains no exception when such service can be avoided unless the non-petitioning parent cannot be located. Thus, the statute states that "if it appears to the satisfaction of the court that a person required to be given notice by this section cannot be located with due diligence within the state, and that such person has no known address without the state, then the court may dispense with notice or require notice to be given to [*2]such persons and in such manner as the court thinks proper" (id). The petitioning parent must present evidence he or she has satisfied the burden to dispense with notice (see, Application of DeJesus, 44 Misc 2d 833, 254 NYS2d 23 [Civil Court of the City of New York, New York County 1964]). Merely asserting, without any proof, that the non-petitioning parent cannot be located with any diligence is insufficient to dispense with service (id). 
Although it appears from the plain text of the statute that in all other instances service upon the non-petitioning parent is required, courts have relaxed the service requirement in various contexts. For example, in In re M.M., 2 Misc 3d 747, 771 NYS2d 315 [Supreme Court Rensselaer County 2003] the court dispensed with the notice requirement where the petitioning parent presented credible evidence the non-petitioning parent presented a safety threat to the petitioning parent and the infant. The court reasoned that although Civil Rights Law §62(1) required notice to all parents, Civil Rights Law §64-a allows the court to dispense with the publication requirements of the name change if to do so would "jeopardize such applicant's personal safety" (id). The court explained that it serves "no useful purpose" to require service of the name change request upon a parent that poses a safety risk only to dispense with the publication requirements to protect the applicant from those same risks. Again, in In re Doe, 3 Misc 3d 648, 773 NYS2d 215 [Civil Court of the City of New York, New York County 2003] the court applied similar reasoning holding that if a parent could dispense with the publication requirements of Civil Rights Law §64-a then service of the underlying petition would "illogically permit perpetration of the very threats to physical safety" (id). 
First, in Thompkins v. Hunter, 149 NY 117, 43 NE 532 [1896] the Court of Appeals explained that when interpreting a statute "resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction, and courts have no right to add to or take away from that meaning" (id). Thus, "a statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration" (Lawrence Construction Corporation v. State, 293 NY 634, 59 NE2d 630 [1944]). Therefore, when a statute is not ambiguous "a court should not attempt to cure an omission in the statute by supplying what it believes should have been put there by the Legislature" (Prego v. City of New York, 147 AD2d 165, 541 NYS2d 995 [2d Dept., 1989]). As noted, Civil Rights Law §62(1) requires notice of a name change of an infant upon the non-petitioning parent. Civil Rights Law §64-a allows dispensing with the publication requirement if certain privacy interests are demonstrated. Consequently, the notice statute has inadvertently failed to provide a mechanism to avoid serving a parent who may violate the same privacy concerns of the infant. However, the court is simply unable to allow the petitioning parent to avoid serving the non-petitioning parent. To the extent an apparent anomaly exists in the statutory scheme it must be addressed by the Legislature. Furthermore, any anomaly is tempered by the reality that service is required upon one individual, namely the non-petitioning parent. While that parent may, in some circumstances, pose some threat to the safety or privacy of the infant, no exception dispensing with service has been carved out by the statute. The exception to the publication requirement, by contrast, applies to anyone posing any sort of danger to the infant or anyone who may violate the privacy concerns of the infant, not just one parent. The much broader reach of these potential harms results in a statutorily sanctioned method in which the publication requirement can be avoided. The safety concerns serving the non-petitioning [*3]parent are obviously limited by the singular reach of the notice. In any event, as noted, only the Legislature can fill in statutory gaps to remedy perceived deficiencies. 
Second, even if the court could dispense with the notice requirement upon a showing such notice could endanger the infant, no such showing has been made at all. The petitioning parent has not presented any evidence the non-petitioning parent poses any risk of harm. Rather, the petitioning parent merely wishes to have nothing to do with her former spouse and seeks to avoid notifying him of the proposed name change. That is surely an insufficient showing of any sort of potential danger that would permit the court to dispense with the publication requirement pursuant to Civil Rights Law §64-a. 
Next, Civil Rights Law §63 does not serve as any basis to dispense with this service requirement. That statute states that where the court is satisfied that "the interests of the infant will be substantially promoted by the change" then the court should approve the name change. Indeed, Civil Rights Law §63 has nothing to do with service at all and if the interests of the child can serve to avoid the service requirement then the service requirement has been rendered obsolete. Therefore, the failure to notify the father, in this case, is not merely "harmless error" which does not affect the ultimate relief sought (see, In re BLK ex rel. JR, 56 Misc 3d 688, 59 NYS3d 247 [Supreme Court Greene County 2016]). The service upon the father is a condition precedent which requires full compliance and without such service, the court cannot entertain the request.
Other jurisdictions that have considered this issue have reached the same conclusion. For example, in In re Larson, 81 CalApp2d 258, 183 P2d 688 [District Court of Appeal, Second District, Division 1 California 1947] the court vacated a name change order filed by the mother where the father, on active military duty, was never notified of the petition. That case involved a statute about notice to military personnel who have an interest in court proceedings, however, the truism the father had a right to notice was the linchpin to the court's analysis. Again, in Carroll v. Johnson, 263 Ark 280, 565 SW2d 10 [Supreme Court of Arkansas 1978] the court held the failure to notify a non-custodial parent of an infant's name change violated that parent's due process rights. The court acknowledged there were other jurisdictions which held the failure to notify was not a due process violation, however, in those states no statute required such notice and the issues involved whether there was any inherent right of a father to demand his offspring bear his surname (see, Fulghum v. Paul, 229 Ga 463, 192 SE2d 396 [Supreme Court of Georgia 1972], Laks v. Laks, 25 ArizApp 58, 540 P2d 1277 [Court of Appeals of Arizona, Division 2 [1975]). Again, in In re Harris, 160 W.Va 422, 236 SE2d 426 [Supreme Court of Appeals of West Virginia 1977] the court held that a non-petitioning father, even a father who abandoned his child, has a right to be notified of such child's name change.
Thus, without any service upon the non-petitioning parent, the court cannot entertain the petition (see, In re Reine R., 57 Misc 3d 444, 56 NYS3d 836 [Supreme Court Suffolk County 2017]).
Therefore, based on the foregoing, the name change request is denied without prejudice. Civil Rights Law §62(1) authorizes the service of a name change petition in the same manner "as a notice of a motion upon an attorney in an action" (id). The petitioning parent must attempt to serve the non-petitioning parent at his last known address. Upon proof of such service the court can then entertain the request.
Dated: June 4, 2025
Hon. Mark Kagan, JCC