[891 NYS2d 619]

In the Matter of E.P.L., Petitioner, for Leave to Assume the Name of E.P.L.

Supreme Court, Westchester County, November 10, 2009

**APPEARANCES OF COUNSEL**

*E.P.L.*, petitioner pro se.

**OPINION OF THE COURT**

WILLIAM J. GIACOMO, J.

This is an application by petitioner, a transgender individual, for a name change to correspond with his male gender identity.

An adult does not need permission of the court to change one's name (*Smith v United States Cas. Co.*, 197 NY 420 [1910]); however, "public policy favors a court's review and granting of name change applications because this makes the change of name a matter of public record." (*Matter of Boquin*, 24 Misc 3d 473, 473-474 [Sup Ct, Westchester County 2009], citing *Matter of Halligan*, 46 AD2d 170 [4th Dept 1974]; *Matter of Mohomed*, 3 Misc 3d 402 [Sup Ct, Rockland County 2004]; *Matter of Linda Ann A.*, 126 Misc 2d 43, 44 [Sup Ct, Queens County 1984].)

In the instant matter, the petition does not reveal any evidence of fraud, misrepresentation, or interference with the rights of others, and therefore the name change petition is granted. (*See Matter of Winn-Ritzenberg*, 26 Misc 3d 1 [App Term, 1st Dept 2009].)

Pursuant to Civil Rights Law § 63, a court-ordered name change must be published in a designated newspaper in the county in which the order is entered within 60 days after the making of the order. However, that requirement may be waived pursuant to Civil Rights Law § 64-a.

Here, citing that provision of the law, the petitioner requests that notice of the order granting his name change not be published in a newspaper in this county or maintained as a court record accessible to the public. Civil Rights Law § 64-a authorizes waiver of publication and sealing of the court record upon a finding that publication of a name change would jeopardize the safety of the person whose name is changed. There are very few reported decisions interpreting the statute, and all of them are based on histories of domestic violence. (*See Matter of M.M.*, 2 Misc 3d 747 [Sup Ct, Rensselaer County 2003]; *Matter of Doe*, 3 Misc 3d 648 [Civ Ct, NY County 2003]; *Matter of L.V.*, 2 Misc 3d 249 [Civ Ct, NY County 2003].)

Petitioner does not recite a history of violence against him. Instead, in support of his request, petitioner reveals a fear for his personal safety in the event that his status as a transgender individual is revealed, stating in his petition that publication

> "would publicly out me as a transgender person and violence against transgender people permeates our society. According to a recent Report of the National Coalition of Anti-Violence Programs (2002), 'the number of reported incidents [in New York City] involving anti-transgender bias has continued to

rise (21%) in 2001, and anti-transgender bias is now present in 13% of all bias incidents.' The Washington Transgender Need Assessment, conducted by Gender Education and Advocacy, found that 43% of transgender individuals surveyed had been a victim of violence or crime with 75% attributing a motive of transphobia or homophobia to the violence."

Unlike the other reported cases in which Civil Rights Law § 64-a was found applicable, the petitioner does not give specific instances of nor state a personal history of threats to his personal safety. However, in researching this issue this court found that there exist numerous documented instances of those targeted for violence based on their sexual orientation or gender identity.[1]

Indeed, the New York Times reported that "[i]n 2007, . . . there was a 24 percent increase nationally in the number of victims reporting such violence." (Frosch, *Death of a Transgender Woman Is Called a Hate Crime*, New York Times, Aug. 2, 2008, at A13.) Furthermore, in 2003, the Southern Poverty Law Center published its special "Intelligence Report" on hate crimes against transgender and transsexual women. In that report, one article called *'Disposable People'* presented evidence that the murder rate of the transgendered was set to outpace that of all other hate killings. (Bob Moser, *'Disposable People,'* Intelligence Report [winter 2003].)[2]

Such violence has become so prevalent that on October 27, 2009, President Barack Obama signed legislation expanding federal hate crimes to include offenses against people based on sexual orientation or gender identity. Recognizing that transgender people continue to be disproportionately targeted for bias motivated violence, the federal statute, known as the "Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act" (Pub L 111-84 § 4701 *et seq.*), adds sexual orientation, gender identity, gender and disability to the categories included in existing federal hate crimes law and will allow local governments to receive assistance from the federal government in these matters.

---

**1.** It should be noted that the New York State Senate is currently debating the "Gender Expression Non-Discrimination Act" (2009 NY Senate Bill S2406), which has already passed the State Assembly and would make it a hate crime for an individual to attack another because of the victim's gender identity or expression.

**2.** The article can be found at http://www.splcenter.org/intel/intelreport/article.jsp?pid=276.

In short, while petitioner did not, and hopefully could not, cite a personal experience of violence or crime against him based on his gender identity, he has made a compelling argument as to why, at the age of 20, he has a right to feel threatened for his personal safety in the event his transgender status is made public.

Accordingly, petitioner's request to be exempted from the publication requirements of Civil Rights Law § 63 is granted.

Furthermore, the records of this name change proceeding are hereinafter ordered to be sealed, and shall be hereinafter opened only by order of the court for good cause shown or at the request of the applicant.