Matter of Cody VV. (Brandi VV.) (2024 NY Slip Op 00961)

Matter of Cody VV. (Brandi VV.)

2024 NY Slip Op 00961

Decided on February 22, 2024

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 22, 2024

CV-23-0596

[*1]In the Matter of Cody VV., an Infant. Brandi VV. et al., Appellants.

Calendar Date:January 8, 2024

Before: Garry, P.J., Pritzker, Lynch, Fisher and Powers, JJ.

Copps DiPaola Silverman, PLLC, Albany (Joseph R. Williams of counsel), for appellants.
Empire Justice Center, Albany (M. Lettie Dickerson of counsel) and Transgender Legal Defense and Education Fund, New York City (David Brown of counsel) and Chosen Family Law Center, New York City (Andy Izenson of counsel) and Volunteer Lawyers Project of Central New York, Syracuse (Sally Fisher Curran of counsel), for Empire Justice Center and others, amici curiae.

Garry, P.J.
Appeal from that part of an order of the Supreme Court (James E. Walsh, J.), entered February 27, 2023 in Saratoga County, which, in a proceeding pursuant to Civil Rights Law §§ 60 and 67, denied petitioners' request to seal court records.
Petitioners commenced this proceeding on behalf of their minor child requesting that the child's name and sex designation be changed (see Civil Rights Law §§ 60, 67) and that the court records regarding the application be sealed (see Civil Rights Law §§ 64-a, 67-b). Supreme Court granted the application to the extent that it ordered the requested changes (see Civil Rights Law §§ 63, 67-a) but declined to seal the record of the proceeding, concluding without explanation or analysis that unspecified interests of the public outweighed any safety concerns raised in the application. Petitioners appeal, and we modify by granting the withheld relief.
The Gender Recognition Act (see L 2021, ch 158), signed into law in 2021, amended various state laws to "remove[ ] longstanding barriers to equality under the law and ensure[ ] expanded protections for transgender and non-binary New Yorkers" (Governor's Approval Mem, Bill Jacket, L 2021, ch 158 at 5). This included Civil Rights Law article 6, governing name changes, and the newly-created Civil Rights Law article 6-a, governing changes in sex designation (see L 2021, ch 158, §§ 2-6). Both articles require a court, immediately upon commencement of a proceeding thereunder, to order "information contained in any pleadings or papers submitted to the court to be safeguarded and sealed in order to prevent their inadvertent or unauthorized use or disclosure while the matter is pending" (Civil Rights Law §§ 64-a [2]; 67-b [2]). It is unclear from our record whether there was compliance with this directive during the pendency of the matter.[FN1]
The issue posed by petitioners here is confined to the permanent sealing of the court records. We begin with the mandatory directive of Civil Rights Law article 6-a: "Upon request of the applicant or sua sponte, the court shall order the records of such change of sex designation proceeding to be sealed, to be opened only by order of the court for good cause shown or at the request of the applicant" (Civil Rights Law § 67-b [1] [emphasis added]). This statutory language is clear and unambiguous. Generally, the law disfavors limitations on access to court proceedings (see Matter of State of New York v John T., 163 AD3d 1148, 1150 [3d Dept 2018]). However, the "good cause" burden ordinarily placed on the party requesting the sealing of court records (see 22 NYCRR 216.1 [a]) does not apply here. In a proceeding pursuant to Civil Rights Law article 6-a, the court records are required to be sealed, in accord with the clearly stated statutory command (see Civil Rights Law § 67-b [1]).
Relative to name changes, Civil Rights Law article 6 provides in pertinent part that
"[i]f the court shall find that open record of an applicant's change of name would [*2]jeopardize such applicant's personal safety, based on totality of the circumstances, the court shall, at the request of the applicant or sua sponte, order the records of such change of name proceeding be sealed, to be opened only by order of the court for good cause shown or at the request of the applicant. For the purposes of this section, 'totality of the circumstances' shall include, but not be limited to, a consideration of the risk of violence or discrimination against the applicant, including such applicant's status as transgender" (Civil Rights Law § 64-a [1]).
It further provides that "[t]he court shall not deny such sealing request solely on the basis that the applicant lacks specific instances of or a personal history of threat to personal safety" (Civil Rights Law § 64-a [1]).
Endeavoring to remove barriers, expand protections and simplify the subject process for transgender and nonbinary New Yorkers (see Governor's Approval Mem, Bill Jacket, L 2021, ch 158 at 5; Senate Introducer's Mem in Support, Bill Jacket, L 2021, ch 158 at 6-9), the Gender Recognition Act expressly authorizes individuals to simultaneously petition for a change in sex designation and change of name (see Civil Rights Law § 67 [3]). Notwithstanding the different sealing standards articulated within the subject articles,[FN2] both provisions expressly recognize an applicant's transgender status as a ground for sealing the records (see Civil Rights Law § 64-a [1]; Matter of JE, 79 Misc 3d 1052, 1057 [Sup Ct, Albany County 2023]). The provisions promote the sealing of name change applications by transgender applicants — on the court's own initiative, even where such relief is not requested.
As petitioners assert, this is for good reason. Despite some progress in our recent past, it remains sadly true, as evidenced by nearly every memorandum in support of the Act, and amply illustrated by the amici in this case, that risk to one's safety is always present upon public disclosure of one's status as transgender or otherwise gender nonconforming (see e.g. Joint Memo of Support, Bill Jacket, L 2021, ch 158 at 16-24). The Legislature recognized that disclosure of such status subjects individuals to the risk of "hate crimes, public ridicule, and random acts of discrimination" (Senate Introducer's Mem in Support, Bill Jacket, L 2021, ch 158 at 9). Courts have also observed this unfortunate reality (see Matter of E.P.L., 26 Misc 3d 336, 338-339 [Sup Ct, Westchester County 2009]; see also Matter of M.M.H., 70 Misc 3d 1203[A], 2020 NY Slip Op 51544[U], *2-3 [Sup Ct, Erie County 2020]; Matter of J.A.L., 53 Misc 3d 1220[A], 2016 NY Slip Op 51758[U], *2 [Sup Ct, Suffolk County 2016]). There is no doubt that violence and discrimination against transgender and nonbinary individuals continue to permeate our society at alarming rates (see New York State Division of Criminal Justice Services, Criminal Justice Statistics: Hate Crime Incidents by Bias Type and Region [Nov. 2023], available at [*3]https://www.criminaljustice.ny.gov/crimnet/ojsa/stats.htm [reporting that anti-transgender hate crimes in the state have doubled since 2018]; Human Rights Campaign, An Epidemic of Violence 2022: Fatal Violence Against Transgender and Gender Non-Conforming People in the United States in 2022 [updated Dec. 5, 2022], available at https://reports.hrc.org/an-epidemic-of-violence-2022; Human Rights Watch, "I Just Try to Make It Home Safe": Violence and the Human Rights of Transgender People in the United States [Nov. 2021], available at https://www.hrw.org/report/
2021/11/18/i-just-try-make-it-home-safe/violence-and-human-rights-transgender-people-united; GLSEN, School Climate for LGBTQ+ Students in New York at 2-3 [2021] [reporting that, in New York, transgender and nonbinary students in particular experienced gender-based discrimination at school], available at https://maps.glsen.org/
wp-content/uploads/2023/02/GLSEN_2021_NSCS_State_Snapshots_NY.pdf).
These safety concerns, which need not be based on an applicant's personal life experience (see Civil Rights Law § 64-a [1]), are clearly stated in the petition before us. Accordingly, not only is the record of this proceeding required to be sealed by Civil Rights Law article 6-a, but petitioners have also demonstrated a well-founded basis for finding that failure to seal the name change records could subject the child to the sort of embarrassment, discomfort, harassment, bullying or even physical violence contemplated by the article 6 sealing standard. On this record, there is no showing of any public concerns whatsoever (see Civil Rights Law § 61). In sum, although Civil Rights Law § 64-a continues to allow some limited discretion in respect to name change applications, application of the statutory terms also requires a substantial basis for finding that the public interest outweighs the need for protection; this would be the extraordinary rather than the customary case.[FN3] Accordingly, we find that Supreme Court abused its discretion in denying the request for sealing.
Pritzker, Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is modified, without costs, by reversing so much thereof as denied petitioners' request to seal court records; application granted to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: It is possible that the court clerk or staff may have taken steps, as necessary, to ensure that the statutory terms were met; however it also appears possible, if not even probable, that the commencement of the proceeding by notice of petition creates a considerable risk of noncompliance, creating a gap where the statute requires an immediate order. One potential manner of addressing this gap is commencement by order to show cause, allowing the court to immediately direct such relief, as required. However, not all counsel or self-represented litigants will be either aware of this alternative procedure or readily able to proceed in that manner, and we urge trial courts to take notice of this mandate and discuss same with their clerks so as to ensure compliance.

Footnote 2: Although unsuccessful bills advancing earlier versions of the Gender Recognition Act in a prior legislative session proposed utilizing the same "totality of the circumstances" standard for sealing requests under both articles (2019-2020 NY Senate Bill S56A; 2019-2020 NY Assembly Bill A3457A), the proposed use of that standard for article 6-a proceedings was soon abandoned in favor of the compulsory language that is ultimately found in the 2021 legislation (see 2019-2020 NY Senate Bill S56B; 2019-2020 NY Assembly Bill A3457B).

Footnote 3: We take note that in the event a court grants both a name and sex designation change upon a combined application, but opts not to seal the name change under Civil Rights Law § 64-a (1), separate orders should be issued and the underlying papers sealed.