Matter of Kieran B. (2025 NY Slip Op 06006)

Matter of Kieran B.

2025 NY Slip Op 06006

Decided on October 30, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 30, 2025

CV-25-0608
[*1]In the Matter of Kieran B., Appellant.

Calendar Date:September 9, 2025

Before:Garry, P.J., Aarons, Fisher, McShan and Mackey, JJ.

Copps DiPaola Silverman, PLLC, Albany (Joseph R. Williams of counsel), for appellant.

Aarons, J.
Appeal from that part of an order of the Supreme Court (James Walsh, J.), entered February 26, 2025 in Saratoga County, which, in a proceeding pursuant to Civil Rights Law § 60, denied petitioner's request to seal court records.
Petitioner is a transgender individual who commenced this Civil Rights Law article 6 proceeding to change her name and to seal the court record of this proceeding. Supreme Court granted the petition to change her name but denied her sealing request because the court found that its sweeping boilerplate list of theoretical "public interest concerns" outweighed the threat to petitioner's safety posed by an open record of the proceeding.[FN1] Asserting that the court abused its discretion in denying her sealing request, petitioner appeals.
By statutory command, a court's discretion to grant or deny a sealing request under Civil Rights Law § 64-a (1) turns solely upon finding "that open record of an applicant's change of name would jeopardize such applicant's personal safety, based on totality of the circumstances." Where the court finds such jeopardy to exist, the sealing inquiry is at an end: "the court shall, at the request of the applicant or sua sponte, order the records of such change of name proceeding be sealed, to be opened only by order of the court for good cause shown or at the request of the applicant" (Civil Rights Law § 64-a [1]). An applicant must demonstrate the potential for harm that could flow from a court record of the proceeding. In that regard, "[t]he court shall not deny such sealing request solely on the basis that the applicant lacks specific instances of or a personal history of threat to personal safety" (Civil Rights Law § 64-a [1]). Further, the court's review must include "a consideration of the risk of violence or discrimination against the applicant," including in connection with an applicant's "status as transgender" (Civil Rights Law § 64-a [1]).
We analyzed Civil Rights Law § 64-a in Matter of Cody VV. (Brandi VV.) (226 AD3d 24 [3d Dept 2024]). There, Supreme Court — the same justice — denied an applicant's request to seal the record of the applicant's name-change proceeding (id. at 25). Reversing the court's denial and ordering the applicant's record sealed, we observed, in sum and substance, that the relevant statutory language reflects the Legislature's determination that transgender individuals face threats to their personal safety that are real, constant and everywhere (id. at 27-28). Thus, only in an "extraordinary" case will there be a "substantial basis" to find that an open court record of a name change proceeding would not place a transgender applicant's safety at risk (id. at 29).
In a "customary" case like this one, protecting the applicant from the threat of harm posed by an open court record of a name change proceeding necessarily takes priority over the public's ability to access that court record (id.; see Matter of E.P.L., 26 Misc 3d 336, 339 [Sup Ct, Westchester County 2009[*2]]; see also Matter of J.W.S., 81 Misc 3d 925, 928 [Sur Ct, Rockland County 2023]; Matter of M.M.H., 70 Misc 3d 1203[A], 2020 NY Slip Op 51544[U], *3 [Sup Ct, Erie County 2020]; Matter of J.A.L., 53 Misc 3d 1220[A], 2016 NY Slip Op 51758[U], *2 [Sup Ct, Suffolk County 2016]). To reverse those priorities is to intrude upon the policymaking authority of the Legislature. To deny a sealing request based upon those inverted priorities is to abuse the limited judicial discretion available under Civil Rights Law § 64-a. To decline to seal the record despite the applicant's showing of jeopardy is to place the applicant at risk of the very harms the statute is meant to guard against (see Matter of Cody VV. [Brandi VV.], 226 AD3d at 28-29; cf. Matter of M.M., 2 Misc 3d 747, 749 [Sup Ct, Rensselaer County 2003]).
Here, petitioner affirmed her transgender status and that she was seeking to change her name to one that reflects her female gender identity, which is the name she uses in her personal and professional life. She expressed her fear that public access to her name change would disclose her transgender status and place her at increased risk of hate crimes, harassment and other discrimination. In view of the totality of circumstances (see Civil Rights Law § 64-a [1]), petitioner has demonstrated that she is entitled to have the record of her name change proceeding sealed pursuant to Civil Rights Law § 64-a (see Matter of KA, 85 Misc 3d 1210[A], 2025 NY Slip Op 50128[U], *2 [Civil Ct, Kings County 2025]; cf. Matter of M.M.H., 70 Misc 3d 1203[A], 2020 NY Slip Op 51544[U], *3). Supreme Court abused its discretion here when it again invoked an inapplicable standard to arrive at the opposite conclusion (see Matter of Cody VV. [Brandi VV.], 226 AD3d at 29; compare Matter of State of New York v John T., 163 AD3d 1148, 1150 [3d Dept 2018]).
Garry, P.J., Fisher, McShan and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied petitioner's request to seal court records; application granted to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: That list "include[ed], but [was] not limited to, the due process of any judgment creditors, the effects upon powers of attorney, any unknown implications with Article 81 proceedings, the due process in foreclosure actions, deed recordation and title insurance, mortgages recorded with the County Clerk's office, probate matters, interference with single scope background investigations for security clearance purposes or firearm authorizations, and lastly, any adverse impact upon future genealogical research."